EDWARD McMahon, Administrator of Thomas P. McMahon, deceased, *v.* The Mayor, &c., of New York.

The father, as administrator of his infant son deceased, may maintain an action for damages occasioned by causing the death of such infant by the wrongful act, neglect and default of the defendant.

To entitle the plaintiff to recover under the statute, it is not indispensable that the deceased should leave him surviving, "a widow and next of kin."

APPEAL from judgment of New York Common Pleas. The action was by the plaintiff, as administrator of his son, Thomas P., to recover damages occasioned by the death of the latter, which, it was alleged, was caused by the wrongful act, neglect and default of the defendants.

The action was tried in the New York Common Pleas, in November, 1864, and resulted in a verdict for the plaintiff. On the trial, exceptions were taken by the defendants to the refusal of a motion for a nonsuit, on the ground that no negligence on the part of the defendants had been shown; and also to a refusal to charge two legal propositions, as requested. There was no complaint as to the charge given.

The general facts were these: In March, 1864, Thomas P. McMahon, the deceased, a bright, intelligent and steady boy, about eleven years old, lived with the plaintiff, his father, at No. 83 Henry street, in the city of New York, which was a tenement-house. The father's family consisted of the mother of the boy and several younger children; and they occupied rooms in the third story (rear portion) of the house. There was a stoop at the entrance of the house, with stone steps leading down to the sidewalk, and the sidewalk was some six or seven feet wide between the lower step of the stoop and the curb-stone. Directly opposite the entrance to the house there was a deep well, some five or six feet wide at its mouth, and which extended several feet under the sidewalk. This well, many years since, had been in use. About eight years previously to the accident, the well had been covered over with boards or planks, and a part of the gutter, curb-stone and sidewalk laid over it. On Friday afternoon, the 4th

March, it was discovered that a portion of the curb-stone and sidewalk, over the well, had fallen in. A wagon and ash-box were so placed by the neighbors as to cover the hole made in the gutter and walk, and notice given at the nearest police station of the condition of the street. The next day (Saturday), in the afternoon, the superintendent of pavements, sidewalks, &c., in the Croton aqueduct department, came and saw the sidewalk and well, and set men at work drawing and dumping from carts, dirt into the hole. After they had been doing this some two hours, the sidewalk and earth, immediately in front of and up to the steps of the plaintiff's house, fell in. The last that was seen of the boy Thomas was on the stoop at the entrance of his father's residence, just before the caving in of the sidewalk and flagging near the stoop. In some way, he was thrown or fell into the pit and buried beneath the flagging and earth which fell in, and was killed. His body was taken from the pit the next morning. There was no direct proof of the precise spot the boy was in at the moment of the accident; but the testimony of one of the witnesses left it reasonably certain that he had just stepped on the sidewalk near the stoop. A woman, who occupied the basement of the house, spoke with him on the front stoop but a moment before. She left to go to her own premises in the basement (the boy following her down the front steps, as she supposed to accompany her), and she had not got down the basement steps before the sidewalk, up to the front stoop, fell in.

Whilst the work was going on of dumping dirt into the well, nothing was done to secure the rest of the flagging from falling and precipitating passengers into the well, nor to prevent them passing over it, where it was apparently firm; nor was there any warning given, by the agents of the defendants, that it was dangerous to persons to stand or pass upon the part of the sidewalk near the stoop.

The father of the deceased was not at home at the time of the accident, being engaged at work in another part of the city. His attention had been called to the defect in the street, the night before, by a neighbor, and he spoke to his wife and son about it, cautioning the latter not to go near it,

who replied that he never went near any dangerous place of that kind. There were a number of men, women and children of the neighborhood, attracted by curiosity, at the place whilst the work of dumping dirt into the breach in the walk was going on, but there was no proof whatever that the deceased was among them.

The cause of the caving in of the sidewalk up to the steps of the plaintiff's house was not altogether clear from the proof. It was probably occasioned by the walls of the well falling in; and there was some evidence to show that this result was produced by the careless way in which the defendants' laborers did their work.

The defendants' counsel, on the plaintiff resting his case, moved for a nonsuit on the ground that no negligence had been shown on the part of the defendants. The motion was denied, and an exception taken.

At the close of the case, the defendants' counsel requested the court to charge "that if the jury believe, from the evidence, that the negligence of either the father or mother of the child contributed to his death, then the defendants are entitled to a verdict." The judge refused so to charge, and the defendants excepted.

The judge was also requested to charge, "that the defendants are entitled to a verdict, inasmuch as there cannot be a recovery by the representative of an infant, unless there be a widow and next of kin of him surviving." The judge refused so to charge, and the defendants excepted.

The judge then charged the jury, and they found a verdict for the plaintiff in the sum of $2,333.

Judgment was entered on the verdict, and the defendants appealed to the General Term of the court, where the same was affirmed. The defendants appeal to this court.

*Francis Kernan*, for the plaintiff.

*John H. Reynolds*, for the defendants.

WRIGHT, J. This was not a case to take from the jury. The evidence, that was but slightly conflicting, tended to establish a strong case of neglect and default on the part of the defend-

ants, by which the lad met a horrible death. Directly opposite the entrance to his father's residence was a deep well, that had formerly been in use, some six feet wide at its mouth, and extending several feet under the sidewalk. About eight years before the accident, resulting in his death, this well had been closed, and the sidewalk constructed partly over its mouth. Instead of being filled up, it was covered with hemlock boards or planks, on which earth or flagging were placed. These boards or planks decaying, a part of the curbstone and gutter, and an outer piece of the flagging fell in, when the proper city officials were notified of the defect. The place was visited by the officer having charge of the reparation of sidewalks, and having set men at the work of filling up the well, by dumping dirt from carts into it, he soon left the laborers to continue the work themselves. Nothing was done to secure the remainder of the flagging from falling and precipitating persons into the well, nor was there any warning given that it was dangerous to stand or pass over that part of the sidewalk near the stoop of the house in which the plaintiff's family resided, or to hinder them passing over the walk where it was apparently firm, but really insecure. Whilst the laborers were engaged in dumping dirt from their carts into the well, the sidewalk fell in up to the steps of the stoop of the plaintiff's house. This was probably occasioned by the stone walls of the well, which had been laid up roughly, falling in. The workmen had been admonished of the danger of their falling in, from the careless way they were attempting to close up the hole, but did not heed the admonition. Indeed, so indifferent were the workmen to their own safety, and that of the men, women and children congregated from curiosity, near the open space, that when the caving in of the sidewalk occurred, one of them and two children fell into the pit. The deceased was precipitated into the pit, and buried beneath the flagstone and earth that fell into the pit with him. It is obvious, from the evidence, that he had just stepped on the walk near the stoop of his father's house when the caving in occurred, and was not in the crowd that pressed near that part of the walk which had previously

fallen in.   But an instant, before the occurrence, he stood on the front stoop of the house in conversation with a woman, whose rooms were in the basement.   She left to go to her apartments (the boy following, as she supposed, to accompany her), and had just got off the sidewalk, and partly down the basement steps, when the "crash," as she described it, came. The sidewalk fell in up to the lower step of the front stoop, and, doubtless, at the instant the boy stepped on it.

In view of these facts, it cannot be pretended that the defendants were free from negligence, and that the case, upon this question, should have been withheld from the jury.   It was culpable negligence on the part of the defendants, to construct and maintain the sidewalk of a thronged street of their city, over the mouth of a deep well five or six feet in width, without securely and permanently closing it.   If they chose not to fill up the well, it was, at least, their duty to see that its walls and covering were sufficient, and that the sidewalk would continue secure.   Moreover, their agents and servants had timely notice of the defect in the street, and set about remedying it in a way, and under circumstances, that seem to have contributed to, if not producing, the fatal result.   When one piece of the flagging fell in, nothing was done to secure the rest of it from falling.   No steps were taken to prevent travelers from passing over it whilst the work of filling up the breach was going on.   No warning was given that it was dangerous for persons to stand or pass upon that part of the walk near the plaintiff's stoop.   Yet, that was without support, and fell in finally.   It was a reasonable presumption, and one which the jury might well have drawn from the evidence, that the direct cause of the accident was the falling in of the walls of the well, and that the negligent and incautious way of repairing the defect, caused those walls to fall in.   It is hardly supposable, from the proof, that the caving in of the walk which precipitated the deceased into the well, with the flagging on which he stepped, resulted from the lateral pressure of the crowd collected to witness the operations of the defendants' workmen; but, rather, as one or more of the witnesses testified, from

the manner of doing the work. Manifestly, it was not a case for a nonsuit, on the ground that the defendants were not chargeable with any negligence.

The charge of the judge is not complained of; the defendants' counsel contenting himself with requests, that were refused, to charge two propositions, which will be briefly noticed. The first was, "that if the jury believed that the negligence of either the father or mother of the deceased contributed, in the slightest degree, to his death, the defendants were entitled to a verdict." This specific instruction was rightly refused. There was no evidence of any negligence on the part of the father or mother, to warrant the submission of the question to the jury; and this is answer enough. But neglect of either, which may have slightly contributed to the accident to the deceased, was not necessarily a defense to the action. The deceased was not an infant, incapable of taking proper care of himself in the street. He was eleven years old, and an unusually intelligent, active and manly youth. Had he survived the injury, and been without fault himself, he could have recovered, notwithstanding his father or mother were guilty of negligence; and so may his administrator, such injury causing his death.

The other proposition was "that the defendants were entitled to a verdict, inasmuch as there could not be a recovery by the representative of an infant, unless there be a widow and next of kin of him surviving." This was not pressed or made a point on the argument. It is clearly untenable. To entitle the plaintiff to recover under the statute, it is not indispensable that the deceased should leave him surviving "a widow and next of kin." (Laws of 1847, chap. 450; id. 1849, chap. 256; *Oldfield* v. *The New York & Harlem Railroad Company*, 14 N. Y., 310; *Quin* v. *Moore*, 15 id., 432; *Tilley* v. *The Hudson River Railroad Company*, 24 id., 471.)

The judgment of the Common Pleas should be affirmed.

DENIO, Ch. J., and DAVIS, BROWN and PORTER, JJ., concurred; CAMPBELL, DAVIES and POTTER, JJ., were for reversal.

Judgment affirmed.