## BEDORE *v.* NEWTON.

The act of July 2, 1870, which provides that the person who sells or furnishes to another intoxicating liquor in violation of law shall be liable, in certain cases where death results, to any person dependent on the deceased for support, for all damage or loss occasioned by such injury, *held* constitutional.

The widow of the deceased, who was dependent on him for support, may maintain an action for damages under this statute.

CASE. The declaration is as follows:   *   *   in a plea of the case for that the said defendant, at said Walpole, to wit, on the first day of February, 1872, did unlawfully keep, furnish, sell, and deliver spirituous liquors to one Lewis Bedore, of said Surry, who then and there was the lawful husband of the plaintiff, and upon whom and upon whose labor and efforts she then was, still is, and ever would be dependent for her support and for the comforts of a home, and that by reason of such unlawful keeping, furnishing, selling, and delivering such spirituous liquors as aforesaid to the said Lewis, he then and there drank the same, and thereby was made intoxicated and contentious, and engaged in quarrelling and fighting with certain persons, and was thereby beat, struck, badly assaulted, and injured, physically disabled, mentally deranged, and killed, whereby the plaintiff permanently lost the means of her support, the comforts of a home, and the society and protection of her said husband, and has suffered, and always will suffer, for the necessaries and comforts of life, and from mental anguish.

Also, for that the said defendant, at said Walpole, to wit, on the first day of February, 1872, did unlawfully keep, sell, furnish, and deliver spirituous liquor to one Lewis Bedore, of Surry, in said county, laborer, who then and there was the lawful husband of the plaintiff, and upon whom and whose labor and efforts she then was, still is, and ever will be dependent for her support and for the comforts of a home, and also to other persons who were then and there present, and that by reason of such unlawful keeping, selling, furnishing, and delivering such spirituous liquors to said Lewis and to said other persons, they then and there drank the same, and thereby were made intoxicated and contentious, and engaged in quarrelling and fighting with each other, and the said Bedore was thereby beat, struck, badly assaulted, and injured, physically disabled for labor and effort, mentally deranged, and killed, whereby the plaintiff permanently lost the means of her support, the comforts of a home, and the society and protection of her said husband, and has suffered, and always will suffer, for the necessaries and comforts of life, and from mental anguish.

Also, for that the defendant, at said Walpole, to wit, on the first day of February, 1872, did unlawfully sell, furnish, and deliver to one

Lewis Bedore, then of Surry, in said county, and being the husband of the said plaintiff, and upon whom and whose labor and efforts she then was and ever would be dependent for support and the comforts of a home, and did also at the same time and place unlawfully sell and deliver to other persons then present spirituous liquor, which the said Lewis Bedore and other persons then and there drank, and therewith became intoxicated, contentious, and quarrelsome, whereby the said Lewis Bedore was then and there badly beaten, physically enfeebled, and mentally deranged, by reason of which the said Lewis Bedore wandered off, became frozen and disabled, and died, whereby the plaintiff lost the society and protection of her husband, her means of support, and the comforts of her home, to the damage of the said plaintiff, as she says, the sum of twenty-five hundred dollars.

The defendant demurred generally.

*Lane & Healey*, for the plaintiff.

*Cushing*, for the defendant.

LADD, J.   The material part of the act upon which this suit is brought is as follows : " In case of the death or disability of any person, either from the injury received as herein specified, or in consequence of intoxication from the use of liquor unlawfully furnished as aforesaid, any person who shall be in any manner dependent on such injured person for means of support, or any party on whom such injured person may be dependent, may recover from the person unlawfully selling or furnishing any such liquor as aforesaid all damage or loss sustained in consequence of such injury, to be recovered in an action on the case." Laws of 1870, ch. 3, sec. 3.

There can be no question but that the declaration shows a case entirely within the provisions of this statute.   It shows that the plaintiff is the widow of Lewis Bedore, who came to his death by reason of intoxication caused by liquor unlawfully furnished to him by the defendant, and that she was dependent upon him for support.

But the defendant says the action cannot be sustained, because the wife has no rights in the person of her husband which can legally be made the basis of a recovery by her of damages for causing his death ; that the value of human life is inappreciable, and not capable of being reduced to a pecuniary standard of valuation ; and, therefore, a law which allows damages for its destruction to be recovered in money by the person injured is in violation of the fundamental rights of private property guaranteed by the constitution of the state.

Doubtless it is to be understood as settled, that no remedy exists at common law in favor of the person injured against one who has caused the death of another, even for the direct pecuniary loss and damage occasioned thereby ; and so it has been held in this state.   *Wyatt v. Williams*, 43 N. H. 102.   It is not important in this case whether the reasons on which this supposed rule of the common law rests are

satisfactory or unsatisfactory.   We are not called upon to discuss or consider them.   I must say, however, that I have never been able to comprehend their force or admit their soundness.   That one person may have a direct pecuniary interest in the life of another, and so suffer a direct pecuniary damage as the immediate and necessary consequence of the act which destroys such life, is too plain to require argument or illustration.   The pecuniary loss occasioned to the owner of a dumb animal by the careless or wilful act which destroys its life is no more the natural, necessary, and immediate result of the act, than the loss occasioned to a tenant *per autre vie* by the destruction of the human life upon which his estate depends.

But the question is not whether the rule itself is sound, or whether the various reasons that have been given in its support are consistent and satisfactory, or otherwise: the position of the defendant can only be sustained by going much further, and holding that it is of so high a character as to come within the protection of the constitution against legislative encroachment or repeal.   To be sure, the right of possessing and protecting property is guaranteed by the constitution, and that doubtless implies that the property of one shall not be ruthlessly, or without legal cause, taken from him and bestowed upon another.   But by what possible stretch can it be said that this act does any such thing?   The legislature have done no more than give redress and compensation, for damage actually inflicted by one party and suffered by the other, in a case where no remedy was furnished by the law as understood and administered by the courts before.

In England, as early as 1846, the rule we are considering, which obviously had its origin with the courts, was repealed by the legislature.   The statute of 9 and 10 Vict., known as Ld. Campbell's Act, after reciting that "no action at law is now maintainable against a person who, by his wrongful act, neglect, or default, may have caused the death of another person, and it is oftentimes right and expedient that the wrong-doer in such case should be answerable in damages for the injury so caused by him," enacts "that, whensoever the death of a person shall be caused by wrongful act, neglect, or default, and the act, neglect, or default is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to a felony."

A large number of actions have been brought upon the provisions of this act, wherein it has undergone the careful scrutiny of eminent counsel, as well as the courts.   Among the reported cases are *Franklin* v. *South Eastern Railway Co.*, 3 Hurlst. & N. 211 ; *Dalton* v. *South Eastern Railway Co.*, 4 C. B. (N. S.) 296 ; *Blake* v. *Midland Railway Co.*, 18 Q. B. 93 ; *Pym* v. *Great Northern Railway Co.*, 4 B. &. S. 396 ; *Read* v. *Great Eastern Railway Co.*, L. R., 3 Q. B. 555 ; *Rowley* v.

*L. & N. W. Railway Co.*, L. R., 8 Exch. 221 ;—but in no case do I find that it has ever been supposed or suggested, either at the bar or from the bench, that any natural or constitutional right of the subject with respect to private property had been invaded by the act.

The same may be said in reference to a similar act, passed in New York the next year after Ld. Campbell's Act, and the cases decided under it ;—see *Oldfield* v. *N. Y. & Harlem R. Co.*, 14 N. Y. 310 ; *Quinn* v. *Moore*, 15 N. Y. 432 ; *Tilley* v. *Hudson River R. Co.*, 24 N. Y. 471 ; *McMahon* v. *Mayor, &c., of New York*, 33 N. Y. 642.

Most of the states now have statutes providing, in one way or another, and in terms more or less general, for the recovery of private damages for causing the death of a human being, and we are not aware that the constitutionality of such acts has been called in question in any of the numerous cases which have arisen under them.

We think the position, that the act under which this suit is brought is unconstitutional for the reason that it gives compensation in damages for causing the death of a human being, cannot be sustained.

No question of remoteness has been made before us. But upon that point we are clear that no valid objection can be raised to the act. It is true the injury may not always be the *immediate* consequence of the defendant's illegal act in furnishing the liquor. But what constitutes remoteness beyond the actionable degree is often a perplexing and troublesome question, and certainly it is one with respect to which the decisions of the courts have not been so uniform and clear as to show the existence of a fixed and definite rule, applicable to all cases. Upon principle, it may not be easy to see why the very liabilities imposed by this statute would not follow from a just application of familiar doctrines of the common law without any legislation on the subject at all. But whether that may be so or not, we are satisfied it was entirely within the constitutional power of the legislature to say that a certain mischief resulting from a certain prohibited act should form the basis of a recovery of damages by the person injured ; and that no right of property guaranteed by the constitution is infringed.

It has been further argued that the law is a penal law, and that it is unconstitutional because it inflicts a second penalty, to be measured only by the caprice of a jury, for an offence already made punishable by a prescribed and definite fine. This view cannot be sustained, for the reason that it is not true in fact. The statute gives to certain specified persons the right to recover the damage actually caused to them by the defendant's illegal act, and nothing more. Whether the defendant has been, or may thereafter be, prosecuted for his violation of the criminal law of the state, no more concerns the party who has suffered a private wrong and damage by the same act in this case, than in case of an assault and battery, a larceny, or other crime, whereby damage is inflicted on an individual by the same act which constitutes a public wrong or crime.                                   *Demurrer overruled.*