ATLANTA COTTON FACTORY COMPANY *vs.* SPEER, by next friend.

[This case was argued at the last term, and the decision reserved.]

1. A corporation acts only through its agents, and unless responsible for their acts is wholly irresponsible. The agent who represents the corporation as master over other employés for the time occupies the position of the corporation for such time as to such subordinates. The corporation is bound to appoint a skilled and prudent manager to such position, and is negligent if it employs an imprudent or incompetent person; and if, from the negligence of this *quasi* master, unmixed with negligence of his own, another servant or employé is injured, the corporation will be responsible.

2. Especially was this the case where the injured employé was a child without access to the president or general superintendent, and who received her orders solely from the manager of the branch of the business in which she was engaged.

(*a*.) It makes no difference that such subordinate manager violated the orders of his superior officer in placing the employé in a position of danger; nor does it matter that at the time the entire factory where the injury occurred was under the general supervision of a watchman, and that he had an altercation with the subordinate manager under whom the class of employés to which plaintiff belonged were at work, in regard to putting them in the room, in emerging from which plaintiff was injured. The watchman and the subordinate manager having settled their difference, and the employés having been put in the room, any negligence in so doing was imputable to the corporation, not to the plaintiff.

3. The court having submitted the question of negligence to the jury, including all the circumstances surrounding the injury, the age of the plaintiff, her ignorance of her danger, the length of time she had been connected with the factory, and the question of contribu-

tory negligence, and the jury having found for the plaintiff, we cannot say that there was error either in the instructions of the judge or in the verdict.

CRAWFORD, J., dissented.

January 16th, 1883.

Master and Servant. Damages. Negligence. Before Judge CLARK. City Court of Atlanta. June Term, 1881.

Hester Speer, by her mother as next friend, brought suit against the Atlanta Cotton Factory Company to recover for an injury received by her by falling through an opening prepared by the company for an elevator. On the trial, the evidence showed, in brief, the following facts:

The factory was under the general management of a superintendent named Harris. Each department under him was in charge of a "boss," and in each room there were two overseers, one of whom had charge during the day, the other during the hours of labor at night. Cobb was the night overseer of the spinning room at the time of the accident, and as such had control of the operatives in the spinning room during the hours of labor at night. Plaintiff was one of these operatives. The superintendent did not communicate directly with the subordinate employés. The factory ran day and night, except Saturday nights, when it suspended work at three o'clock on Sunday morning, and remained inactive until Monday morning. After work ceased at night, the night watchman was in charge of the factory. On Sunday morning, April 4th, 1880, the operatives in the spinning room ceased work about the usual time. Most of them went home as usual, but there were some children who were afraid to return home before daylight. Among these was the plaintiff, who was about fifteen years of age. They were conducted to a basement room where the employés were in the habit of taking coffee at night. The general instructions of the superintendent to the night watchman were that no employé should be allowed to remain in any part of

the factory, except this basement room, after the suspension of work on Sunday morning. Cobb went into the basement room, and, finding it damp and cold there, told Mattox, the night watchman, to carry the children to what was known as the cloth room on the second floor. The watchman replied that it was against orders to allow them in the mill, and that the company would "be coming on" him; that he had to obey rules, and would not have anything to do with it. Cobb responded that he would take the responsibility, and thereupon conducted the children to the cloth room. The watchman did not actually forbid this, but replied as just stated. The cloth room was situated on the second floor, and was slightly separated from the main body of the factory, being connected therewith by a passage-way some sixteen or eighteen feet in length. On one side of this passage-way, and outside of the direct line between the doors, the company was constructing an elevator, and for that purpose had opened a hole in the floor about six by eight feet in size. The carpenters employed by the company were engaged in other work, and only worked on the elevator at odd times, so that its progress was slow, and it had been under process of construction for a month or two before the accident. Ordinarily, a plank was placed in front of this hole to prevent accidents, but on this particular night the precaution seems to have been omitted. There was some conflict in the testimony as to what Cobb said to the girls on putting them in the cloth room. He testified that he told them to go in and lie down on the burlap which was there, and not to play about the room at all or leave the room, and that he closed the door on going out; and this was corroborated by two or three witnesses for the defence, as to telling them not to go out of the room; while plaintiff and another witness testified that Cobb said the girls could go in the cloth room and play, lie down, sleep or do as they liked, provided they did not get on the white cloth, and plaintiff stated that Cobb did not close the door.

v 69—10

After placing the girls in the room, Cobb went home. There was a light in the cloth room, but none in the passage. Plaintiff had never been in the cloth room before, and did not know of the hole. After Cobb's departure, the children began to play at hide and seek, and plaintiff, going out into the passage for the purpose of seeking a better hiding place, fell into the hole cut for the elevator and was seriously injured. The superintendent was sent for, and, arriving in about half an hour, sent the plaintiff home, accompanied by a doctor.

There was some testimony on behalf of plaintiff to the effect that the superintendent said he had previously told the president that if the place was not fixed some one would fall through. This was denied by the superintendent, who also stated that after the operatives ceased work on Saturday night, Cobb had no authority to let them go over the factory, and that no one had any business in the cloth room, except those who were connected therewith; he admitted having carried some of the children into the cloth room one night and allowed them to sleep on the rolls of burlap, but he did not think that Cobb was present, or that he had mentioned the fact to Cobb.

There was some other testimony in regard to the extent of the injury, etc., not material here.

The jury found for the plaintiff three thousand dollars. Defendant moved for a new trial on the following grounds:

(1.) Because the verdict is contrary to law.

(2.) Because the verdict is contrary to evidence.

(3.) Because the court erred in charging the jury as set out in the third subdivision of the charge of the court.

(4.) Because the court erred in charging the jury as set out in the fourth subdivision of the charge.

(5.) Because the court erred in charging the jury as set out in the fifth subdivision of the charge.

(6.) Because the court erred in charging the jury as set out in the sixth subdivision of the charge.

(7.) Because the court erred in charging the jury as set out in the seventh subdivision of the charge.

(8.) Because the court erred in charging the jury as set out in the eighth and ninth subdivisions of the charge.

(9.) Because the court erred in charging the jury as set out in the tenth, eleventh, twelfth and thirteenth subdivisions of the charge.

(10.) Because the court erred in charging the jury as set out in the fourteenth and fifteenth subdivisions of the charge.

(Those portions of the charge excepted to are set out below.)

(11.) Because the court refused to charge the jury, as requested by defendant in writing, before the charge began, " If you find from the evidence that after the factory stopped work on Saturday night, Cobb's authority ceased, and on the Saturday night that plaintiff was hurt, if you find from the evidence that the factory stopped work and Cobb's authority had ceased, and the plaintiff with other girls had gone to the room in the basement, where defendant allowed them to stay, and that Cobb went to that room, and, in violation of the orders of defendant, invited or carried the plaintiff and other girls to the cloth room and left them there, telling them to remain there, and the plaintiff, while playing, went out of that room into a passage and fell into the hole made for the elevator, then I charge you that she would not be entitled to recover in this case, even if you further find that the defendant was negligent in leaving the hole there."

(12.) Because the court refused to charge, " If you find from the evidence that plaintiff had no business in the cloth room, or in the passage where the elevator hole was, and that Cobb had no authority, under the rules of the defendant, to carry her there, then in the eye of the law she would be a trespasser, and cannot recover in this case, even if you should find that the defendant was negligent."

(13.) Because the court refused to charge, " If you

find from the evidence that by the use of ordinary care the plaintiff could have avoided the injury, then she cannot recover in this case. Ordinary care is that care which prudent men exercise in their own affairs." .

(14.) Because the court refused to charge, " If you find from the evidence that the plaintiff by any negligence contributed to the injury, then she cannot recover, even if you find that the defendant was negligent."

(15.) Because the court refused to charge, " Negligence is a question of fact for you to determine ; you will look to all the evidence, and if you find that Cobb put the plaintiff in a safe room, well lighted, and told her to remain until daylight, and after he had gone she went out of the room into a dark passage and fell into the hole, then you are to decide whether this was negligence in her and whether it contributed to her falling into the hole."

(16.) Because the court refused to charge, " If you find from the evidence that Harris, the superintendent, gave orders to keep the hole protected, and some co-employé, without the knowledge of defendant, and against its orders, removed the protection, and this caused the plaintiff to be injured, the plaintiff cannot recover."

(17.) Because the court refused to charge, " If you find that the defendant issued orders which would have prevented plaintiff from being injured if they had been obeyed, and that the plaintiff, or other co-employés, disobeyed their orders, and then the plaintiff was injured, she would not be entitled to recover, even if the defendant was negligent in leaving the hole unguarded."

(18.) Because the court refused to charge, " The rules which govern in the case of mere children do not apply to minors who have attained to years of discretion. Such minors are responsible for their failure to use the ordinary degree of care. It is for you to determine from the evidence as to her age and intelligence, whether or not the plaintiff was a mere child and not responsible for her conduct, or whether she was old enough and of sufficient

intelligence to be responsible for her negligence. Do you find that she was old enough and intelligent enough to know that she ought not. to have left that room where Cobb put her, telling her to remain there, and that she ought not to have gone into a dark passage with which she was not familiar."

The subdivisions of the charge which were excepted to are as follows:

[3 Subdivision.] "But upon the supposition that you might find in favor of the plaintiff some damages, and not by way of expressing or intimating to you an opinion that you ought to find any damages, I will charge you upon the measure of damages in this case. You should come to the conclusion under the principles of law I give you in charge, applying the evidence to them, that she is entitled to recover. In the first place, if the injury is a permanent one, she is entitled to recover as much damage in money as you may think under the law and evidence she is entitled to. You have heard the physicians testify, and from that, and all other evidence in the case applicable to it, you make up your minds as to what amount of damages would be reasonable and just. There is no way of arriving at that sort of damage, gentlemen of the jury, by measuring it in dollars and cents. It is, as the attorneys have told you, an injury to the manhood or womanhood of the plaintiff, which renders her less able to enjoy life in all its respects. You must judge for yourselves, under the evidence, what that is, and for that you must fix upon some amount, provided that you believe that the injury exists now, and that it will, in all probability, forever exist—that is, that it will affect her, more or less, all her life. If you should believe, gentlemen of the jury, upon the other hand, that the injury is not of such a permanent character, but that it has existed, and yet exists, why then you would not be authorized to find damages, except as to the extent which the evidence satisfies your minds the injury is, and the length of time it has and will exist. There is, as I said

to you, no way of measuring such damages in dollars and cents. It is left to the enlightened conscience of an impartial jury, taking care to be just and reasonable, and not excessive or oppressive.''

[4.] "Another element of damage is the pain and suffering that she has endured, if you believe from the evidence that she has endured pain and suffering. That also is not to be measured in dollars and cents, but is left to your enlightened conscience as impartial jurors, with the same qualifications I gave you before. You have a right also, gentlemen of the jury, to allow damages, if you see fit, for any further pain and suffering which the evidence satisfies your minds that the plaintiff, from her condition, must inevitably suffer, as, for instance, if you believe that she suffered pain at first, and that she suffers it now, and that from the nature of the injury she must continue to suffer it as long as she lives, you may add whatever you think is right to your verdict."

[5.] " So these are the three elements: the permanent injury or the loss to her of her enjoyments of life or capacity to enjoy life in any respect, or in every respect, as the evidence may satisfy your minds; the pain and suffering which she has suffered, and suffers up to now, if the evidence satisfies your minds of both of these facts; and the pain and suffering which she will probably suffer, if you are satisfied of that from the nature of the injury and the evidence in the case."

[6.] "But as I said to you, whether or not she will recover anything at your hands will depend upon the principles of law which are applicable to this case, and which principles of law I will give you in charge, and to which you will apply the evidence. The principles of law are divided (that is, according to my conception of the case) into two kinds: first, in reference to the liability of the defendant to any one who may have been injured; and, secondly, to the liability of the plaintiff to this defendant (?) as one of its employés."

[7.] "In the first ground, if you believe from the evidence that the defendant had in the factory a place of danger; if you believe there was an elevator hole through which anybody might have fallen, and that it was not sufficiently protected, or not protected at all, at the time this injury occurred, then the defendant would be liable to any one who was lawfully in that house, and who should fall through that hole, and should not from the evidence have prevented the falling by the exercise of due caution, or, as the law properly expresses it, ordinary care and caution."

[8.] "The next, as I said, is in reference to this defendant's liability to this plaintiff as one of its employés. To make you understand more fully the nature of this relation, I should state that in the first place this defendant is a corporate body, and that it can only do and commit acts through its officers and agents. Whoever the evidence satisfies your minds was in charge of the whole factory, he was the first officer thereof; he was the commanding officer and superior to all other persons, whether other officers or laborers. He stands in the place of the corporation, and under him are all other grades, whether they come, or were, first, second or third to him, and that the evidence satisfies your minds were in authority there."

[9.] "Well, in reference to this particular case, if you believe from the evidence that this plaintiff was one of the employés of that factory, and that Mr. Cobb (I believe is his name) was present, was in command over her and commanded her, and he himself was a subordinate officer of the highest officer in charge of the factory, and that it was the custom of the factory, recognized by the highest officer in charge of the factory, to allow these children or minor employés to remain all Saturday night until morning, and that Mr. Cobb took these children, for their better protection, up into another part of the factory and left them there until daylight, and that while they were so

left there, that this plaintiff was one who was left there, and that she fell through the elevator hole; if you believe from the evidence there was such a one there, and that she could not have prevented that by the exercise of ordinary care and caution, then the defendant would be liable to her for whatever damages she has sustained, provided always, that you should believe, for this is for you alone to consider, that having this elevator hole there was an act of negligence on the part of defendant."

[10.] "Negligence under our law is a question of fact for the determination of the jury. If you do not believe that this elevator hole was an act of negligence, or rather leaving of it in the condition which the evidence satisfies your minds it was in, was an act of negligence, why then you cannot find for the plaintiff."

[11.] "Because you must believe, in order to make the defendant liable, that it has been guilty of an act of negligence, and in the second place, that the plaintiff is only entitled to recover because she has been injured by reason of the act of negligence upon the part of the defendant, which she could not have avoided by ordinary care and caution, or which she did not contribute to by her own negligence."

[12.] "Now, upon this point I charge you, if she could have avoided it by ordinary care and caution, and fell, she could not recover, or, as I have charged you, that if she contributed to it by her own negligence, she could not recover. Upon the point of contributing, like all others, it is a question of fact for you to consider whether she contributed to this negligence, and was guilty of any act of contributory negligence which caused her fall; whether she did that or not, you must look at it from the circumstances of the case. You must look to her age, you must look to her sex, you must look to the condition of her employment and the necessity of her remaining there during the night."

[13.] "I say you must take everything of the nature

under the evidence into consideration, because they make one of the principal elements of the case for your consideration by which you are to test, or in part to test, having reference to all the evidence, whether she was guilty of contributory negligence. As to her age, if the evidence satisfies your mind that she was a minor, and if a minor, how old, then see if, under the circumstances in which she was situated, you will charge her with having contributed by her own negligence to this act. If you do, why she cannot recover under the rules of law. If you do not, why then she can recover such damages as you may choose to allow her under the rules of law I have given you in charge."

[14.] "The defendant invokes the rule of law that there can be no recovery of a master for an injury that may have been caused to an employé by a co-employé. This is the general rule, but there are some exceptions to it. One is, where a co-employé is in the master's place, so as to have the right to command the employés under him, and he does so command in a matter connected with the master's business, and an employé thus commanded obeys, and in that obedience an injury follows. Another is of a co-employé, by whose negligence the injury occurred, and who is engaged in the running of machinery; for instance, the person, whoever he may have been, that had in charge the running of the elevator and the protection from it of other persons; you will have to refer to these two exceptions."

[15.] "I have stated to you in order to arrive at your conclusions from the evidence as to whether the injury that occurred to this plaintiff and caused by the negligence of a co-employé, who comes within these exceptions; if not within these exceptions, and the plaintiff here had arrived at the years of discretion, so that in the minds of the jury she would be responsible for her acts as other persons would be, the jury would have to treat her as being under

the general rule of employés and co-employés, and could not find for her."

The motion was overruled and defendant excepted.

HOPKINS & GLENN, for plaintiff in error.

HOKE SMITH, for defendant.

JACKSON, Chief Justice.

The controlling question made in this case is, whether a minor girl, just fifteen, can recover from a manufacturing company damages for a fall through an unprotected hole made for an elevator during its construction, when she was left Sunday morning at three o'clock in an unlocked room within five feet of the elevator, by orders of the boss over the room where she and other girls worked, it being the custom of the company to keep the girls at work Sunday morning to that hour, and to allow them to remain in the factory until daylight to go home.

The charge of the court below and the refusals to charge make this question when analyzed and applied to the facts of the case. It becomes, therefore, wholly unnecessary to consider in detail all the segments into which the charge is cut, from beginning to end, in the hope seemingly to find some rotten wood somewhere in the block, or to consider each of the various requests to charge spread out apparently like a net to catch something.

As a whole, the charge and refusals to charge, or modifications of the requests asked, give the law of the case correctly to the jury, and the facts sustain the verdict they have rendered, in the opinion of a majority of the court.

1. A corporation acts only through agents, and unless responsible for their acts is wholly irresponsible. The agent who represents the corporation as master over other employés for the time is in the shoes of the corporation,

and whether they fit him, and he wears them with propriety or not, is their concern, for the reason that the corporation employs him, and puts others under him as a skilled and prudent manager. It is negligent if it fail to employ such a one, because those others under him must be subject to his orders and obey his directions, or the great purpose and end of their creation, to-wit, organized and systematic labor and its fruits, are at at end. If, from the negligence of this *quasi* master, this *locum tenens*, unmixed with negligence of his own, another servant or employé of the corporation is hurt, it must logically follow that the corporation is responsible, or it can be held responsible for no carelessness at all. From the president and general superintendent down to the smallest child who labors day or night, all the servants of this creature of the law, this impersonal entity, are co-employés, differing only in the character of their work and the amount paid them for it. If no co-employé can recover for the negligence of another, it must follow that no servant of a corporation can recover from it, no matter what it does, for it does nothing except by an employé. It would be thus to except corporations from the rule that a master is responsible to his employé for torts and careless and reckless disregard of life and limb. It would be to endow the artificial person with powers which no natural person can possess, and to grant that artificial creature immunities which no one of its creators can enjoy himself. It is not sound sense or good policy. It cannot be good law.

2. But when these minor servants of the grand head, the corporation, are children, who can have no access to the great managers, who can receive no instructions from them, but who look alone and must look alone to him under whom they particularly work, and from whose lips alone the orders and behests of the corporation ever reach their ears, it seems to us simply monstrous to hold that for the wrongs and negligence of these lords of theirs they

cannot recover, because their lesser lords violated orders which superior magnates had given to them.

It makes no difference, therefore, in this case, whether Cobb, the man under whom they worked that night, violated his superior's orders or not. The children looked to him. Him they must obey or lose their places. Nor does it vary the question that, after working hours were over, another servant of the corporation, a watchman, had charge generally of the factory, and that he and Cobb had some altercation about the latter's putting the girls in that room. They were put in there by the person to whom they were accountable. Besides, the watchman yielded to Cobb and permitted them to be taken to the cloth room, and when the matter thus terminated between the superiors, is it right to lay blame upon the children? The reason and sense of the matter, it strikes us, is to lay the blame of their going to the room to Cobb, their special overseer, with the final acquiescence of the watchman, rather than to the children. It is law, too, as we understand it. The whole reason on which the liability of the master for injury to his servant for carelessness of a co-employé who rules for the time rests, is that the master was negligent in employing an incompetent agent. The negligence must be traced to the master and put on him; and it is put on him when he is careless in selecting subordinates who are entrusted with the care of others. If the rule of the company was to keep the children in the basement, and Cobb did not obey it, he was unfit for his trust when the watchman reminded him of that rule; if the watchman was clothed with power to rule Cobb, and did not do it, but surrendered his authority, and yielded to Cobb in violating the rule, he was incompetent. So that in either event, the negligence finds its source at last in the want of careful selection in the appointing power of the corporation, its president or superintendent, which is always that negligence which binds the master in case

Atlanta Cotton Factory Company *vs.* Speer, by next friend.

an employé is hurt by another employé who is his superior over any branch of business.

3. Nor does it matter, we think, that the children played in the room at hide and seek, and the plaintiff stepped out of the door to hide behind it, and fell in the hole. It was a natural supposition that they would while away the remaining hour or two before day. It was gross negligence in those who put them in the room not to warn them of the pit-fall just out of the door. It was equal negligence to leave such a hole with nothing around it to protect unwary feet from an awful fall. · The court left that question of negligence, under all the facts and circumstances, to the jury, having regard in respect to contributory negligence on the part of the plaintiff to her age, her entire ignorance of her danger, the short time (only two weeks) in which she had been connected with the factory, and we cannot say that in so leaving it there was error, as negligence is always a question for the jury ; nor can we say that the finding of the jury is not supported by sufficient proof to uphold it.

Whilst wise policy will beckon to this state all capital which may seek investment in manufacturing industries of all sorts, and should encourage its co-operative force in granting liberal corporate powers, privileges and immunities, yet the sound limbs and lives of the children of the state must not be left unprotected. If, in greediness for gain, the sanctity of the Sabbath be violated by keeping them at labor until three o'clock Sunday morning, an hour too late and dark for young girls to go immediately to their homes, according to the judgment and custom of this company itself; and if, in consequence of the impracticability of their then leaving for home, they be permitted to remain until the broad light of the Lord's day shine on their way, the corporation must see to it that the agents, whom it employs to protect and guard them, be careful to make them safe while within its curtilage, else it were

better that the girls risk the rough and dark streets without, than the deeper and ruder holes within the walls of the factory.

Judgment affirmed.

Cited for plaintiff in error: Shear. and Redf. on Neg., 92, 63, note; Wharton on Neg., 203; Code, §2972; 17 *Ga.*, 358; 9 Allen., 396; 33 N. Y., 642; 1 Thomp. on Neg., 246, 308; 3 Woods, 391; 44 *Ga.*, 251; McDonald *vs.* Eagle & Phenix Co., 68 *Ga.*, 839; 3 Bing., 303.

For defendant: Wood on Mas. and Svt., 544, 172, 500, 509, 718, 721, 456, 640, 687; 49 N. Y., 255; 46 *Ib.*, 672; 2 Lansing 506; 26 Vt., 178; 102 Mass., 572; 10 Allen, 368; 99 Mass., 216; 17 Wal., 659; 21 Minn., 207; 22 Kansas, 686; Cooley on Torts, 553; 3 Foster and T., 622; 64 *Ga.*, 304; 15 Wall., 401; Cooley on Torts, 549, 605; 102 Mass., 672; 21 Am. R., 385; 100 M. S. R., 213; 1 *Ga.*, 195; 30 *Ib.*, 146.

SPEER, Justice, concurred, but furnished no written opinion.

CRAWFORD, Justice, dissenting.

Hester Speer, the plaintiff in this suit, aged fifteen years, was an employé in the spinning room of the Atlanta Cotton Factory. The mill ran night and day. The plaintiff was a night hand. On Sunday morning, April the 4th, 1880, at 3 o'clock, the mill shut down, and the hands were discharged until Monday. Some of these, and among them the plaintiff, lived too far from the mill to return home at so early an hour, and by direction of the superintendent they were always allowed at such times to occupy the basement of the building until daylight. To this room they went. The night overseer, or second "boss," of the spinning room, passing the basement, saw them lying down on the benches and some of

them asleep ; he told them to go up into the cloth room where it was warmer and more comfortable. The watch-man, into whose care and custody the mill had passed when the work stopped, objected, but the overseer said that he would take the responsibility, and carried them up. He spread pallets for them, and told them that they might go to sleep, or they might play there till daylight, so that they did not get on the white cloth. The room was large and lit up with gas. They began to play hide and seek. Some hid behind the cloth, others in different places about the room, but the plaintiff went outside into the hall, where there was no light, and in search of a more satisfactory place, fell through an opening into which the company was preparing to place an elevator.

For the damages sustained by this fall she brought suit against the company, and recovered a verdict for three thousand dollars.

A new trial was moved and refused, and error is assigned thereon.

Whilst there are many grounds taken in the motion, I notice such only as, in my opinion, control and dispose of the case.

1. The judge among other things charged the jury: " If you believe from the evidence that the defendant had in the factory a place of danger, an elevator hole through which anybody might have fallen, and that it was not suffi-ciently protected, or not protected at all, at the time this injury occurred, then the defendant would be liable to any one who was lawfully in that house, and who should fall through, unless the evidence shows you that such falling could have been prevented by ordinary care and caution."

This charge, to my mind, is erroneous, because it dis-tinctly lays down the law to be that any one who was in the basement or the cloth room rightfully might go at will through the entire factory, either in light or darkness, whether dangerous or safe, and if hurt could recover dam-

ages therefor, provided he or she exercised care and caution in passing through such other portions thereof.

The corporation, whilst completing its machinery or conveniences, might allow visitors or operatives in some, and yet not in all parts of their building.  To be invited into the office, basement or cloth room by one authorized to do so makes it lawful to be in those rooms and in the house ; yet, it cannot be that such invitation gives the right to every part of it, and into places where no one is invited and none expected.  If, therefore, one should go from a place of perfect safety, where he has been invited, to a place of danger, where he is not invited, and a casualty befall him, he certainly should not be allowed to recover his damages by showing that ordinary care and caution on his part in such place would not have prevented his injuries.  I hold that, being at a place where he had neither business nor an invitation, and where his presence was not anticipated, and, therefore, his protection not provided for, his risk was his own and not that of the corporation.  It would make, to my mind, as clear a case of *damnum absque injuria* as is to be found in the books. And such is the case.

2. The next charge objected to which I notice is as follows: "In reference to this particular case, if you believe from the evidence that this plaintiff was one of the employés of that factory, and that Mr. Cobb (the overseer of the spining room) was present, was in command over her, and commanded her, and he was a subordinate officer of the highest officer in charge of the factory, and that it was the custom of the factory to allow the minor employés to remain all Saturday night until morning, and that Mr. Cobb took these children, for their better protection, up into another part of the factory, and left them there until daylight, and that while they were so left, this plaintiff fell through the elevator hole, and that she could not by ordinary care and caution have prevented it, then the defend-

ant would be liable for whatever damages she sustained, provided you believe that having this elavator hole there was an act of negligence on the part of defendant."

I do not think that this charge was authorized by the evidence, for, as I read it, these hands had been dismissed from the spinning room—had gone into the basement, the place assigned to them at night—that the authority of Cobb had ceased with their departure from his room—that his right to command or give direction in any way had been superseded by that of Mattox, the night watchman, who protested against it, and lastly that he gave no command whatever.

Conceding, however, that he had given a command, as indicated by the charge, it would not have been binding on the company, nor were the employés under the slightest obligation to have obeyed it. His right to command ceased with the closing down of the mill and the retiring of his hands from their work-room.

Nor does the evidence show that he was a subordinate officer of the highest officer in charge of the factory at the time the injury occurred. The right which he exercised was wholly unauthorized, either for himself or the plaintiff. The highest officer had given orders that such employés as remained over after work hours might be permitted to occupy the basement, a room provided with tables and benches, and where coffee was served at midnight to the operatives, and to this the plaintiff had gone by authority; from it she was invited without the authority, without the knowledge, and without the expectation of the highest officer who represented the corporators of the factory, and against the wishes and objections of the officer who was in immediate charge and represented the corporation.

It was the individual act of an unauthorized person, and for whose conduct in the premises at the time of the casualty the company cannot, in my opinion, under the law, be held responsible.

v 69—11

This factory cannot be held responsible for this injury unless it be guilty of such negligence towards the plaintiff as to fix the blame on itself therefor. Taking the undisputed testimony, then, we find that the spinning room was safe, and so was the basement, as against this opening for the elevator; that the duties of the plaintiff and the overseer of the spinning room had ended, and that they had been discharged until the following Monday; that the night watchman had entered upon his duties and had the control of the factory; that the overseer of the spinning room, against the orders of the superintendent, over the protest of the officer in charge, and on his own declared responsibility, undertook to provide for the plaintiff more comfortable quarters by removing her from the basement, a place of perfect safety, to the cloth room; that this was done, beds spread for her and her companions in this room, which was well lit up, and they instructed to remain there until the morning; but upon his leaving, the plaintiff, being in a place of safety, saw fit to leave it and seek another outside the room and in the dark, where she encountered danger and her injuries followed.

Thus, it seems to me, that when the superintendent of the factory had provided the plaintiff with a perfectly safe place, and directed that she occupy it, if then an unauthorized person carry her, against orders, to another place, and she is injured thereby, it is in nowise the fault of the factory. But even if this be not so, and it is held that the plaintiff's removal to the cloth room was authorized or justifiable, still, if she, after being told to remain there until morning, of her own accord saw fit to leave that room, where there was light, warmth, comfort and safety, and go out, against orders, where there was neither light nor safety, but where there was danger, and suffered thereby, the blame was her own, and she should not be allowed to go into other people's pockets and take pay for injuries occurring from her own imprudence.

That the place may have been a place of danger to others who had occasion to be there, either on duty or invitation authoritatively given, cannot be invoked to justify damages to one who was there on neither. There were doubtless many places of danger in the factory, and about the premises, to one passing around in the darkness of the night, but to which no one was authorized or expected to go; yet, if a recovery can be had for this injury under the facts of this case, one might be had for any injury sustained by the plaintiff, if on the premises and outside of the basement room. The most that can be claimed for the plaintiff is, that she was a mere volunteer or licensee, and such cannot recover for injuries from defective premises, although the same may be the result of negligence on the part of the owner. Wood's Master and Servant, section 342.

If the unauthorized act of a second "boss" of a spinning room in a factory, when off duty, and in disobedience of orders, shall render liable to damages the property of the stockholders for injuries occurring by reason of such act, then it is exceedingly hazardous to invest in such property. But when it is made further to appear that the injuries are but the result of other and further disobedience of orders by the party claiming the damages, and still they are given, capital must, and will, find other uses and employments where it will not be so easily reached and subjected to division.

"A master is not responsible for any act or omission of his servants which is not connected with the business in which they serve him, and does not happen in the course of their employment. If the act is done while the servant is at liberty from his service, and pursuing his own ends, there can be no question of the master's freedom from all responsibility, even though the injury could not have been committed without the facilities afforded to the servant by his relation to his master." Shear. & Red. on Negligence, sec. 63.

" It is the duty of the master to keep his premises, nec-
essarily used in the prosecution of his business, in a
reasonably safe condition, and if he fails to do so, he is
liable to the servant for all injuries resulting to him from
such defects, * * * unless such defect arises or is
not repaired in consequence of the negligence of a co-
servant."   " Where machinery is defective, materials
insufficient, or premises dangerous, through the neglect
or wrongful act of a fellow-servant, the master is not re-
sponsible, unless fault is attributable to him in the employ-
ment or retention of such servant."   Wood's Law of
Master and Servant, sections 334, 390, and authorities
cited.

Applying these principles of law to the facts of this
case, we find that the act of Cobb, who was only a
second boss in the spinning room, was not only without
authority, and against positive orders, but at a time while
he was at liberty from the master's service and pursuing
his own ends.   That his relation to the master afforded
him the opportunity to violate his orders, and indirectly
enabled the plaintiff by her own further disobedience of
orders to injure herself, cannot fix responsibility on the
master.

Even admitting that there was negligence in not
fencing the elevator hole; that the premises were dan-
gerous, and that the plaintiff was rightfully there, the
proof shows that the defect arose from the neglect of the
carpenter, the mere wrongful act of a fellow-servant, and
for which the master is not responsible, unless he was at
fault in his employment or retention, and of this there is
no pretence to be found in the record.

If either of these servants, the boss of the spinning
room or the carpenter, by whose acts of negligence the
injury was occasioned, had been the " alter ego " of the
master, to whom he had left everything, then their negli-
gence would have been his, and he could have been held
liable, but not otherwise.

Numerous authorities might be cited in support of this principle of law, but the case of Malone *vs.* Hathaway, decided in the N. Y. Ct. of Appeals, and reported in the Alb. Law Journal, vol. 13, p. 114, is so thoroughly in point that none other need be referred to.

Taking all the facts of this case to be as claimed by the plaintiff under the proof submitted, there is, in my judgment, no liability on the defendant to respond to the plaintiff for her damages. The only shadow of liability arises upon the failure to protect the elevator hole, which was in a place where the plaintiff had no business, and no right to be, and no excuse for being. Conceding even that there was negligence in leaving it open, it was negligence not applicable to, or available for, the plaintiff in a suit for her damages. If there were negligence at all, it was that of the carpenter, who removed the protection on Saturday evening and failed to replace it. It is nowhere insisted in this record that he was the "*alter ego*" of the factory, its superintendent or stockholders.

According, therefore, to my view of the facts and the law of this case, I think that the verdict should be set aside and a new trial granted.

[This case was argued at the last term, and the decision reserved.]

