## BRUSH ELECTRIC LIGHT & POWER CO. *v.* WELLS.

1. In a suit against an electric light and power company, brought by a widow for the homicide of her husband alleged to have been killed while in the employment of said company through the negligence of the defendant, the burden was on the plaintiff of establishing such negligence on the part of the company, and this can not be done simply by showing due care on his part. It was, therefore, error for the court to charge in effect that the plaintiff would be entitled to recover if the husband's life was lost through the negligence of the defendant, *or* if it was not the fault of the plaintiff, and to charge further that "the servant must show that the master was at fault, or show that he was not at fault." And this error is not cured by the judge in a subsequent portion of his charge giving the correct rule as to what burden the plaintiff should carry, without calling the jury's attention to the mistake made in the previous part of his charge.

2. Where testimony as to sayings of an employee of defendant, made at a time when they could not have been considered as a part of the res gestæ, was admissible only for the purpose of impeaching such employee as a witness, the court, upon request of defendant's counsel, should have cautioned the jury that they should not consider such sayings as admissions binding the defendant.

3. It was not admissible for a witness, who was not shown to be an expert, to testify, over the objection of counsel, that the deceased was doing the work he was required to do at the time of his death in a proper or an improper manner; such testimony being an expression of an opinion, and not a statement of a fact.

4. There was no material error in the rulings of the court complained of in the grounds of the motion for new trial, not dealt with in the preceding notes; and, except as above specified, the charge of the court substantially and fairly covered the issues in the case.

Argued January 26, — Decided March 4, 1898.

Action for damages. Before Judge Norwood. City court of Savannah. July term, 1897.

*Saussy & Saussy, A. C. Wright, J. L. Whatley* and *A. Minis,* for plaintiff in error. *H. D. D. Twiggs,* .contra.

LEWIS, J. Rebecca Wells sued the Brush Electric Light & Power Company for $10,000 damages, alleging, in substance, that on May 27, 1896, her husband, Marlow Wells, while in the employment of the defendant company and engaged, under its direction, in repairing or doing necessary work on the lead wires used for the lighting of a drug-store in the city of Savannah, received a violent shock from a current of electricity which, without his knowledge, was suddenly and unexpectedly turned on the wires, resulting in his death. The shock was received as follows: The wires were strung on a pole near the drug-store; there are two crosspieces on this pole on which insulators are fixed. The upper crosspiece is used for the company's parallel wires, the lower is used for its lead wires, and is five or six feet below the upper. The two lead wires are connected with the main wires, and are dropped down to the insulators on the lower crosspiece, to which they are secured. From these they pass into a converter, which is also secured to the pole, about twelve or fifteen inches below the second crosspiece, and from this converter they are carried into the drug-store. Plaintiff's husband had climbed the pole to the first crosspiece, about sixteen feet from the ground, and in order to do the necessary repairs it became necessary to cut the lead wires. He had succeeded in cutting one of them, severing it just above the insulator, leaving a small piece or point projecting therefrom. In passing his right arm around the pole to cut the other wire at the same point, he rested his right arm, between the elbow and armpit, on this projecting wire, and in some manner his arm, shoulder, or other hand came in contact with the hanging wire which he had just severed; so that when he seized the second wire with his nippers, to cut it, he received through his body the powerful voltage from the company's wire, which caused his death. Immediately previous to the accident there was no current on the wires, but it was turned on from the company's power-house at the moment he was engaged in the act of cutting the second wire, and his death was caused by the gross negligence of the

company in turning on the current at that time.  The testimony in behalf of the plaintiff tended to establish substantially the above facts.  It appeared from the evidence that it was the duty of the engineer at the power-house, before turning the current of electricity upon the wires, to give a signal by his whistle so as to inform linemen of the danger.  Just before Wells received this shock a whistle was blown.  He asked the foreman upon the ground, in charge of the work upon which he was engaged, if that was not the whistle, but the foreman responded it was a mill whistle, and to go ahead with his work.  There was some testimony that gloves had been prepared by the company to be used in such work, but that they were never used by any of the employees.  The engineer testified that he did give the usual signal before turning on the current.  The plaintiff's contention was that it was not given.  There was a verdict for plaintiff for $5,000.  Defendant made a motion for a new trial, which was overruled, and it excepted.

The grounds of the motion were, that the verdict was contrary to law and evidence, and excessive, and that the court erred as follows :  (1) In charging :  "The plaintiff must satisfy you that the husband's life was lost through the negligence of the defendant, or that it was not the fault of the plaintiff (?) by which his life was lost.  At this point I give you the law of the code bearing upon this question :  If the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover ; but in other cases the defendant is not relieved, although the plaintiff may in some way contribute to the injury sustained.  If the deceased either caused the injury by his negligence, or could by ordinary care have avoided it, the verdict should be for the defendant.  If the deceased was faultless, neither contributing to the negligence nor omitting ordinary care to avoid it, the verdict should be against the company for full damages.  If the deceased contributed to the injury, but did not himself cause it, and could not have avoided it by ordinary care, the verdict should be against the company, but not for full damages; the damage allowed should be diminished in proportion to the fault attributed to the plaintiff.

That, in brief, is the law applicable to this case." (2) In charging: "The servant must show that the master was at fault, or show that he was not at fault; that is the principle I gave you in charge just now." (3) In overruling defendant's objection, duly made, to the following interrogatory propounded by plaintiff to the witness James White: "State whether Wells was doing the work he was required to do at the time of his death, in the proper and usual manner, or in an improper and unusual manner?" (4) In refusing to caution the jury, as duly requested by the defendant, that they could not consider the following statement which plaintiff's witness, John A. Goette, testified East made to him on the day of the accident, as an admission to bind the defendant, but could consider it only as testimony offered to impeach East: "A few minutes before he [Wells] got the shock there was a whistle blowing. Wells asked if it was our whistle. I said, 'No, it sounds like a mill whistle; go on with your work.'" There were other grounds of the motion, complaining of refusal to charge certain requests; but, except as above quoted, we think the charge of the court fairly covered the points in the requests that were material and legal.

1. This case is governed by the law concerning the relative duties of master and servant. In a suit by a servant against his master for personal injuries, the burden is upon the former to show negligence causing the injury by the latter, and this burden is not removed by proof that the servant was, at the time of the injury, in the exercise of due caution and care. The law imposes upon the servant, especially while working with dangerous machinery of his master, the duty to exercise due diligence to avoid any casualty to himself; and if he fails to exercise such care, he can not recover, though the master may himself have been at fault. The law upon this subject is thoroughly and clearly discussed by Justice Simmons in the case of *Georgia Railroad and Banking Co.* v. *Nelms*, 83 *Ga.* 70. On page 75 of said case is quoted the following extract from Wood in his "Law of Master and Servant": "The servant seeking to recover for an injury takes the burden upon himself of establishing negligence upon the part of the master, and due

care on his own part." The charge complained of in the first and second grounds of the motion for new trial, in the light of the above principle, is manifestly wrong. It implies that the plaintiff would be entitled to recover either by showing that her husband's life was lost through the negligence of the defendant, *or* by showing that it was not the fault of her husband. The charge is open to further objection, in that it excludes from the consideration of the jury the question as to whether neither party was at fault; and raises the presumption that if the deceased was not at fault, he can recover, regardless of the fact whether or not the defendant was negligent. It is insisted by counsel for the defendant in error that the misstatement of the law in the ruling of the court above mentioned was corrected in subsequent portions of his charge in which the correct rule was given upon the subject. It is true that the law was correctly stated by the judge before finishing his charge to the jury; the proper rule being embodied in a request made by counsel for the company. This was prefaced by a statement of the court that it was given at the request of the company's counsel. The judge did not call the attention of the jury to the erroneous statement he had previously made bearing upon the same point. The jury then had before them two conflicting rules of law to guide them in reaching a verdict, one given by the court as the law of the case, and the other given by the court as a request of counsel. How could the jury say which one they should follow or discard? They would likely be more apt to follow a principle announced by the court without any suggestion from counsel than one announced at their request.

2. The sayings of the employee in this case were not made at a time and under such circumstances as to form a part of the res gestæ of the transaction under investigation. They were admissible, and doubtless admitted, solely for the purpose of impeaching the employee as a witness for his company; but the jury, unless especially cautioned to consider the testimony only as throwing light upon the credibility of the witness, and not as in any wise throwing light upon the truth of the admission made, would be apt to conclude that the testimony was

admissible for all purposes, and that it was really binding upon the defendant company. It was, therefore, error to refuse the request of defendant's counsel to give such caution to the jury upon this evidence.

3. The answer of the witness to the interrogatory, that the deceased was doing the work at the time of his death in a proper or an improper manner, was merely the expression of an opinion, and not the statement of a fact. It not being claimed that this witness was an expert, it was permissible for him only to state the facts as to how the work was done, if he could; and whether the manner of its performance was proper or improper was an inference for the jury to draw.

4. As this case goes back for another trial, we of course intimate no opinion in regard to the sufficiency of the testimony for a recovery. After a careful examination of the record, we have reached the conclusion that there was no material error in any of the rulings of the court complained of in the other grounds of the motion, and a new trial is granted solely on account of the errors above specified.

*Judgment reversed. All the Justices concurring.*