# CASES

## DECIDED IN THE

# SUPREME COURT OF GEORGIA

### AT THE

## OCTOBER TERM, 1899.

---

### HAMBY v. UNION PAPER-MILLS COMPANY.

1. Two persons subject to control and direction by the same general master in the same common object are fellow-servants, and if one is injured by the negligence of the other, the master, save when by statute otherwise provided, is not liable, although the negligent serv-.ant has the right to direct the work of the other.
2. An adult who had been for three weeks at work upon an obviously dangerous machine which was slightly defective, and who was injured, can not recover of the master, where the proximate cause of the injury was not the defect in the machine but his own want of care.

Argued February 1, — Decided February 27, 1900.

110   1
a110 198

110   1
f118 177

110   1
123   37

110   1
c124 581

110   1
c127 621

Action for damages. Before Judge Candler. Rockdale superior court. April term, 1899.

The plaintiff was an employee in the defendant's paper-mill, and a part of his duty was to guide paper through a cutting-machine. Another employee, one Mitchell, had control of the running of the machine, and the plaintiff was his helper and was working under his direction. In the operation of the machine the plaintiff stood in front of it, and the paper was passed to him from the opposite side by Mitchell, and guided by the plaintiff as it passed between rollers by which it was carried under a stationary knife, situated under the rollers, and below which and attached to a drum or cylinder was a knife which, by the revolu-

1                               1

tion of the cylinder, was carried upward in the direction of the plaintiff and against the stationary knife, thus cutting the paper. In order to control the course of the paper as it passed from between the rollers, a board of about the length of the stationary knife was fastened against that knife and close enough to the rollers to prevent the paper from going over the back of the knife. This board had a beveled edge where the paper came in contact with it, but on the occasion in question the edge of the board was notched and rough, and this caused the paper to choke. The plaintiff had been working there about three weeks, and during that time the paper choked in this manner perhaps once or twice a day. On this occasion it choked the first time it was put into the machine; and Mitchell thereupon said to the plaintiff: "When I give it to you again, you reach your hand under there, and pull it out, and don't let it choke." Mitchell then handed the paper to the plaintiff, and the plaintiff took it with one hand. As to what happened then, the plaintiff testified: "At this time we were just feeding one sheet, but the slitters would split it and make two. . . . Jim told me to catch hold of the upper and lower sheet, to pull this one through and don't let it choke; and about that time he told me to catch the other one. I caught at it, but didn't catch it. I got caught. I put my hand under here and caught the paper with this hand. I had the paper with that hand when it caught me, but I didn't have it with this hand. I had it with one hand and was trying to grab it with the other hand. I had this sheet all right, but hadn't saved it from choking. I had one hand under the roll and the other over it, and I couldn't see both hands at once; and it is not but six inches and a half from that knife to where the rolls come together, and the rolls are something like fifteen inches through,—round rollers about fifteen inches. . . That cylinder might have been about as big around as a waterbucket. I could not say how plain to my view that revolving knife was as it came up, for I wasn't looking at it. I had the paper to look at. I was watching Jim Mitchell and reaching the paper when he handed it to me. I was trying to get the paper unchoked when the knife cut me. . . I could stand back from the machine and see the whole thing, but standing up close

to it, as I was, I could not see. I knew the knife traveled around, of course, when the machine was running. . . It was the knife that caught my hand. It caught my finger right under there and just slipped it off." Plaintiff further testified: "If the board had been smooth and in order, I wouldn't have had to put my hand in there on that side at all; it would have come right on, and the revolving knife would have come right on and taken it in; it would have gone right on smoothly through. . . I had had no experience at all in running that machinery; that was left to Mitchell, on the tower I worked on. I was not familiar enough with the machinery to know what was the matter with it. I just did whatever he told me to do. I never had even changed the slitters or the knife to make the different sizes of paper; I had nothing to do with changing the machinery in any way. . . That board was put there by the man who fixes the machinery for the company. After my hand was hurt it was taken out and dressed and put back. . . I suppose at that time if I had seen that it was rough, I wouldn't have known but that that was the way it ought to be." "Mr. Dautry was the superintendent of the factory at that time, and Mitchell and I were under him. We were both engaged in putting the paper over the rollers, bringing it around coming properly in contact with the knives." "I put my hand under there at the direction of Mitchell. I was working under his orders. Dautry told me to work under his orders." "Dautry put me in there to do whatever Mitchell told me to do."

The plaintiff's petition alleged that the injury to his hand was due to negligence on the part of the defendant in using defective machinery and in the directions given to him by Mitchell. He excepted to the grant of a nonsuit.

*George W. Gleaton,* for plaintiff.

*Howard Van Epps* and *Beverly W. Wrenn Jr.,* for defendant.

SIMMONS, C. J. A careful reading of the facts of this case authorizes us to announce as applicable to them the principles set out in the two headnotes. These principles have been ruled by many cases, among them the following: *McDonald* v. *Ea-*

*gle & Phenix Mfg. Co.,* 68 *Ga.* 839; *McGovern* v. *Columbus Mfg. Co.,* 80 *Ga.* 227; *Ellington* v. *Beaver Dam Lumber Co.,* 93 *Ga.* 53; Civil Code, §3830; *Stubbs* v. *Atlanta Mills,* 92 *Ga.* 495; *Hoyle* v. *Excelsior Steam Laundry Co.,* 95 *Ga.* 34; *Willingham* v. *Rockdale etc. Co.,* 101 *Ga.* 713. These cases discuss thoroughly every element of the present one, and it is unnecessary to do more than refer to them.

*Judgment affirmed. All the Justices concurring.*