*Kay, Bennet & Conyers* and *Roscoe Luke,* for plaintiffs.

*Theodore Titus,* contra.

---

## INGRAM *v.* HILTON & DODGE LUMBER COMPANY.

Under the rulings made by the Supreme Court when this case was formerly before it (108 *Ga.* 194; 119 *Ga.* 652), and under the evidence introduced on the last hearing, the grant of a nonsuit was erroneous.

Action for damages. Before Judge Parker. Glynn superior court. May 22, 1905.

*Toomer & Reynolds* and *Krauss & Shepard,* for plaintiff.

*W. E. Kay* and *W. G. Brantley,* for defendant.

LUMPKIN, J. This case has been twice before the Supreme Court. (108 *Ga.* 194; 119 *Ga.* 652.) On the last trial a nonsuit was granted, and the plaintiff excepted. When the case was here the second time, the judgment was reversed mainly because the court charged that if Anderson was assigned to work on the brow or raised platform by the superintendent, or by an inspector, such officer or agent would be the alter ego of the defendant, and that if there was any negligence in this respect by reason of the assignment of Anderson to do work for which he was known to be unsuited and incompetent, and an injury to the plaintiff resulted from the unskillful conduct of Anderson, negligence in so assigning him would be attributable to the company. This charge made the defendant liable for the conduct either of the general superintendent, or of the lumber inspector, who was a mere fellow-servant of the plaintiff, though he might not have acted by direction of the master. It was also held that the evidence offered by the defendant tended to show that the injury was the result of an accident, and that a charge on that subject should have been given. In the present record there is nothing to show that the lumber inspector had anything to do with putting Anderson to work on the raised platform or brow. Anderson testified: "Mr. Lyles was the general superintendent of the Hilton & Dodge Company's cypress mill on Saint Simons. On that day Mr. Lyles chose me in Jonas Bryan's place, he being sick that day, to truck on the brow. . . I told Mr. Lyles that I had not had experience enough to do that work; that I had never done it in my life. He told me that I was there to obey orders, and that if I didn't do what I was told to do, he had no further use for me. . . Mr. Lyles told me he wanted me to go and take Jonas Bryan's place to-day trucking on the brow, and I told him that I was not able to do it, that I had never done it before; I was afraid to do it, because it was such dangerous work; I was rather young and just afraid it needed a man who knew all about that kind of work. . . I obeyed Mr. Lyles and went and trucked on the brow. . . Mr. Lyles was my superintendent. . . I had been working under Mr. Lyles at the cypress mill about seven or eight months before Mr. Ingram was hurt." The plaintiff testified that Lyles was the man at that mill who em-

ployed and discharged men.  These quotations will suffice to show that there was ample evidence to indicate that Lyles was not a fellow-servant with Ingram, the plaintiff, who was a lumber inspector employed at the mill, but that in assigning Anderson to work on the brow he was acting as the alter ego of the defendant.

In *Moseley v. Schofield Co.,* 123 *Ga.* 197, 200 (referring to a statement in the declaration that a person alleged in the alternative to be the "superintendent, or foreman," was guilty of negligence), it was said: "While that individual is described as a 'superintendent, or foreman,' and while neither of these words necessarily imports that the one to whom they were applied was the alter ego of the defendant, it was alleged that he had authority to employ laborers, and was in charge of the work; and under repeated rulings of this court, such a person would be the vice-principal of the master. *Atlanta Cotton Factory v. Speer,* 69 *Ga.* 137; *Woodson v. Johnston,* 109 *Ga.* 454; *Taylor v. Georgia Marble Co.,* 99 *Ga.* 512." Where employees are in the service and subject to the general control and direction of a common master and the labor of each conduces to the accomplishment of the same general purpose for which they are employed, they are fellow-servants. *Brush Electric Light Co. v. Wells,* 110 *Ga.* 193; *Ingram v. Hilton & Dodge Lumber Co.,* 108 *Ga.* 194. This does not mean, however, that there is no such thing as a vice-principal. In a certain broad sense everybody connected with a corporation, from the president down to the humblest employee, conduces, or is supposed to conduce, to the general purpose or business of the corporation; but they are not all fellow-servants. The question under consideration in each of the two cases cited was whether two employees laboring for a common master occupied towards each other the relation of fellow-servant, and the test applied was that stated above.

On the subject of how the occurrence took place, Anderson testified in part as follows:  He explained the difference in the nature of the work between that which he had been doing and that which he was required to perform, and stated that the trucks were different, and that the lumber carried on them was different in size and length from that which he had been accustomed to handle; that when he reached the place where he was to put the piece of lumber off the truck, the pile was too low for him to shove the piece upon it; that he intended to put it on the brow; that he put his shoulder

on it and "bore down;" that it swung too far out before he could stop it, and went down through a hole broken at the outer edge of the brow, striking the plaintiff and injuring him. The plaintiff testified, among other things, that he was at work as a lumber inspector of the company, underneath the platform or brow, and a short distance away from the hole in the edge of it, and that in checking the lumber underneath the brows it was necessary to be where the inspector could best see the marks, sometimes at one end of the truck and sometimes at the other. He also said: "If a man above on the brow is using ordinary care, the men below would not run any risk of being hurt. . . I would think there would be a good deal of peril to people underneath the brow if an inexperienced negro who had never trucked with a balance truck before in his life was put on the brow to truck the lumber. Yes, sir, it takes combined care and skill to do that trucking."

From what has been said we think it plainly appears that there was sufficient evidence for the jury to determine whether Lyles was a vice-principal or not, and, if he was, whether he was negligent in putting Anderson to do work of the character and at the place where he was, and whether the injury to the plaintiff resulted therefrom.

The declaration alleged negligence on the part of the defendant in two respects: first, in having an incompetent, ignorant, unskilled, and inexperienced person performing the difficult and responsible work of trucking lumber and timber upon the brow or platform; and second, in "maintaining" and allowing a hole to be and remain in such brow or platform. It is contended by counsel for defendant in error that negligence in both respects must be shown in order to authorize a recovery. But in this view we can not concur. If there was a want of ordinary care on the part of the defendant in either respect, and the injury resulted therefrom, a failure to prove negligence in both particulars would not prevent a recovery. The evidence for the plaintiff shows that the hole was there, and the piece of timber went through it. If this be true, whether the negligence consisted in permitting the existence of the hole, or in putting an incompetent servant to do work, by reason of whose unskilfulness a piece of lumber passed through the whole, or in both combined, is a question for the jury. The continued exist-

ence of the hole may constitute an act of negligence, or may be a mere physical fact. But if the plaintiff was injured by reason of either or both of the acts of negligence alleged, there may be a recovery, unless the plaintiff is debarred therefrom by reason of lack of due care on his part.

Counsel for the plaintiff contends that he does not rely upon the duty of the defendant to furnish the plaintiff a safe place to work, so much as upon its duty to furnish safe appliances. The brow or raised platform, however, was not an appliance furnished to the plaintiff for him to work upon or with; nor does it appear that he was directly connected with the trucking of lumber upon it or the piling of lumber from it, or that he inspected the lumber as it was thus carried and piled. The declaration as to these points makes a case of furnishing an unsafe place for the plaintiff to work. It alleges that the defendant was negligent "in maintaining and allowing said hole to be and remain in the said brow or platform; of which your petitioner then and there had no knowledge, he supposing, on the contrary, that said brow or platform was in good repair or condition, as it should have been; but your petitioner shows that the said brow was not in good repair and condition, and there are numerous broken places and holes in the same which rendered its use by the said company for the purpose aforesaid dangerous to those of its employees whose duties required them to be under the said brow or platform."

There may be some inconsistencies or differences in the testimony. The jury may or may not believe that the plaintiff was hurt as he contended, or that the defendant was negligent in either or both of the respects alleged, or that the plaintiff by the exercise of ordinary diligence could have known of the danger, or could have avoided it. What ordinary care requires a master to do in regard to selecting an employee for a particular work, or in regard to providing a safe place to work, is not necessarily identical with what ordinary care requires of his employees who work at that place. But all of these questions, under the evidence, were for the jury rather than for the court, and they should have been solved by a verdict, and not by a nonsuit.

*Judgment reversed. All the Justices concur, except Fish, C. J., absent.*