MOORE, by next friend, *v.* DUBLIN COTTON MILLS.

1. Except in case of railroad companies, the master is not liable to one servant for an injury arising from the negligence or misconduct of other servants about the same business.
2. The term "vice-principal," as used in the fellow-servant law, has been defined as including any servant who represents the master in the discharge of those personal or absolute duties which every master owes

to his servants; such duties being often referred to as the non-assignable duties of a master.

3. Among the non-assignable duties of the master are, providing machinery and appliances, the place to work, the inspection and repair of premises and appliances, the selection and retention of servants, the establishment of proper rules and regulations, and the instruction of servants. This enumeration, however, is not exhaustive, but simply illustrative.

4. It is not the grade, or title, or the position in the service, that determines whether a person is a fellow-servant or a vice-principal of the master, but it is the duty which the servant performs towards the other servants.

5. Mere supervision, and nothing more, by one of a number of servants, over the work in which they are engaged, will not necessarily raise the employee from the position of a fellow-servant to that of a vice-principal. Supervision, coupled with the·discharge of other duties in connection therewith, may have this effect.

6. When the business of the master is connected with the operation of dangerous machinery and appliances, it is the duty of the master to provide rules for the conduct of his servants in the discharge of the duty imposed upon them in reference to the operation of such machinery and appliances. The master may discharge this duty by the promulgation of general rules on the subject, or he may authorize a servant to give general directions in the nature of rules governing the matter.

7. When the master authorizes a servant to give general directions in reference to the manner and mode in which his business shall be carried on, and such business embraces the operation of dangerous machinery and appliances, a general order, given by such servant to those with whom he is working, to be followed on each and every occasion when the act involved is to be performed, is, in effect, an order from the master, and if the servant is injured the master is responsible, provided the injured servant is free from such negligence as would preclude a recovery, and obedience to the order resulted in injury for the reason that there was a latent danger in the operation of the machine, which the master knew or ought to have known.

8. When the servant seeks to hold the master responsible under the rule stated in the preceding note, it is incumbent upon him to show, not only that the order was given and obeyed, but that the order involved an act of such character that, from the nature of things, the direction must have emanated from the master; and it must also appear that the servant who gave it was in terms authorized by the master to give the general order, or that the scope of his employment was such that his authority extended to giving general orders of that character.

9. While the words "superintendent," "foreman," "overseer," and the like, do not necessarily import that the employee bearing such title was the vice-principal of the master, this fact, in connection with the character of the work and the character of the order given in reference to the operation of dangerous machinery, may be sufficient to raise a question for the jury as to whether such servant was, on the occasion in question, the vice-principal of the master, or only a fellow-servant of the plaintiff.

10. When the evidence in its entirety is taken in its most favorable light for the plaintiff, it presented questions for the determination of a jury, and it was error to grant a nonsuit.

Submitted July 18, 1906.—Decided February 15, 1907.

Action for damages.  Before Judge Burch.  City court of Dublin.  January 10, 1906.

John Moore, a minor, brought suit by his next friend against the Dublin Cotton Mills.  He amended his petition in stated particulars after it was filed.  As amended, the petition contained the following allegations, in substance: The Dublin Cotton Mills is a corporation under the laws of this State.  Plaintiff was employed by it and assigned to the duty of operating a carding machine. As a part of said machine there are three cylinders; one in front, known as the doffer; one in the middle, known as the main cylinder; and the third located in the rear of the machine.  It is so constructed that the doffer may be stopped while the main cylinder and the other machinery continue to revolve.  The doffer and the main cylinder come together inside of the press, and where these cylinders come together a box is located which is intended to catch the waste and fragments of lint; the box being inside of said machine and enclosed.  To remove the waste and clean the box it is necessary to open a small door, 12 inches by 12 inches, and insert a brush or rake.  This box extends the length of the cylinder, which is about six feet, and it is about two feet wide at the bottom, extending upward, in a converging manner, about three feet, to where the doffer and the main cylinder unite; making the top of the box much smaller than the bottom.  The cylinders are protected by a metal covering, which extends upward in the box to a point about six inches from the top, leaving the cylinders exposed for about six inches in space at the top of the box.  The only light conveyed into the box is through the small door above referred to; thus making it impossible to ascertain that the cylinders are exposed at the top.  The main cylinder is coated with wire teeth, and when revolving rapidly is very dangerous, and at the top of the box, where exposed, will catch any object that may come in contact with it, and draw it under the metal covering. To clean the box thoroughly it is necessary to place the hand inside of the box, so as to properly use the brush or rake.  A rule of the defendant required that the machine should be cleaned every

Friday. Before undertaking this task plaintiff would stop the machinery, and all of the rollers connected with the machine, and proceed to clean the same, using the brush provided for that purpose, which was about 18 inches long. On Friday, March 4, 1904, plaintiff stopped the machine, and had just finished cleaning the box and removing the waste, when N. S. West, the alter ego of defendant with respect to plaintiff, and who was at that time and is now superintendent of defendant, in charge of the work and in control of the employees, whose orders plaintiff was bound to obey, came to plaintiff, and, noticing that the machinery was stopped, protested against plaintiff carrying on his work in this manner, and in a very commanding manner told plaintiff that there was no use or sense in stopping the machinery to clean the box, and instructed plaintiff to do so no more; telling him that he should shut off the doffer, but not to shut off the other machinery, that the main cylinder was covered and there was no danger in cleaning out the box with it running. On the following Friday, when the time arrived for cleaning the machine, the plaintiff being unacquainted with the machinery and not knowing that at the top of the box the main cylinder was uncovered and exposed and dangerous, and having been informed to the contrary by the superintendent West, and believing his statement that there was no danger in removing the waste from the box with the cylinder running, and it being apparently safe for him so to do, and it being his duty to carry out the instructions of the superintendent, it being impossible for him to see, from his position, that it was not safe to obey the order, he proceeded to do so, shutting off the doffer and allowing the main cylinder to run. After so doing he began, in a careful and prudent manner, to remove the waste from the box, using the brush or rake furnished for that purpose. While in the prosecution of this task he extended his hand just inside of the box in order to brush the waste from the top (which was necessary), feeling absolutely confident that the superintendent had told him the truth,—that there was no danger. The main cylinder at that time revolving rapidly, the wire teeth on the cylinder, where exposed at the top, caught the brush and pulled plaintiff's hand between the cylinder and the metal covering, mashing and crushing the thumb and the wrist of his left hand, rendering them permanently stiff and so mutilating three fingers that they had to

be amputated. At the time of the injury the plaintiff was only 16 years of age, and had been working about the machinery only a few weeks. He knew nothing about machinery, and his injury resulted from the misplaced faith and confidence which he placed in the statement of the superintendent as to the manner in which the machine could be safely operated. Plaintiff did not know that the cylinder was exposed, and did not know of the danger incident to cleaning the box with the cylinder running, and had never been warned of such danger, but on the contrary had been instructed that there was none. It is alleged that the defendant knew or ought to have known that the cylinder was unprotected and exposed at the top, and that it was dangerous to clean the box with the cylinder running, and that the plaintiff did not have equal means with the defendant of knowing these facts. It is alleged that the defendant was negligent, in that its superintendent, West, its alter ago, told him that the main cylinder was covered and protected, and that there was no danger incident to cleaning the box with the cylinder rapidly running.

The defendant filed an answer, in which it denied all the allegations of negligence contained in the petition, and, in substance, alleged that the injury to the plaintiff resulted from his own negligence and recklessness. At the trial the plaintiff introduced testimony tending to establish the allegations of his petition in reference to the manner in which he was injured, and the extent of his injury. The testimony in reference to the relation which N. S. West bore to the defendant and to the plaintiff is contained in the following language, quoted from the testimony of plaintiff: "Mr. N. S. West is superintendent over the hands at the Dublin Cotton Mills. I was working under West's authority—Mr. N. S. West;" and the testimony of the witness Barlow, who said, "Mr. P. L. West was general superintendent of the Dublin Cotton Mills at the time Moore got hurt. Mr. N. S. West had charge of all of the laborers out at the Dublin Cotton Mills at the time Moore got hurt. He was overseer. He had charge of the work and hands." At the conclusion of the plaintiff's evidence the judge granted a nonsuit. The plaintiff excepted.

*K. J. Hawkins* and *M. H. Blackshear,* for plaintiff.

*T. L. Griner, W. C. Davis* and *James K. Hines,* for defendant.

COBB, P. J.  (After stating the facts.)  The petition alleged that N. S. West was the vice-principal of the defendant, and the defendant contends that the evidence introduced failed to establish this allegation, and that, under the evidence, West was only a fellow-servant, and hence the defendant was not liable to the plaintiff for his negligence.  The case absolutely turns on this question; for, as to the other allegations of the petition, the evidence of the plaintiff is sufficient to establish them as they are therein laid.  The entire evidence on the subject of whether West was the vice-principal or a fellow-servant will be found quoted in the language of the witnesses in the statement of facts.

What is known as the fellow-servant rule is thus stated in the code: "Except in case of railroad companies, the master is not liable to one servant for injuries arising from the negligence or misconduct of other servants about the same business."  Civil Code, §2610. The term "vice-principal," as used in the law of fellow-servants, has been defined as including any servant who represents the master in the discharge of those personal or absolute duties which every master owes to his servants.  Employees charged with the duty of providing machinery and appliances, the place to work, the inspection and repair of premises and appliances, the selection and retention of servants, establishment of proper rules and regulations, and the instruction of servants, have all been held to occupy the position of vice-principals to the master, so as to render him liable to any servant for a dereliction of duty on their part. The above enumeration is not intended to be exhaustive of all the absolute duties that the master may owe to his servants, but simply illustrative of what are such duties.  There may be duties of this class other than those referred to.  Whenever the law imposes upon the master a duty towards the servant which is absolute in its nature, the master can not escape responsibility for failure to discharge this duty by merely assigning it to a servant, no matter what his grade or class in the service.  It is not the position of the servant in the service that fixes the liability of the master, but it is the duty which the servant is performing towards other servants.  12 Am. & Eng. Enc. Law (2d ed.), 948 et seq.; 2 Labatt's Mas. & Ser. §508 et seq.; 6 Cur. Law, 555 et seq.; 8 Words & Phrases, 7313, "Vice-Principal."  For convenience those

duties of the master will be referred to hereafter as the non-assignable duties of the master.

There are numerous decisions of courts of high standing that an employee to whom the master has entrusted the entire management and supervision of a distinct and separate department of business is a vice-principal.    In *Brush Elec. Light Co.* v. *Wells,* 110 *Ga.* 192, the present Chief Justice, in an able and elaborate opinion, demonstrated that this is not, and never has been, the rule in this State, the older cases which apparently recognize this rule not being, for the different reasons pointed out by him, authoritative declarations on the subject.    There are probably some cases from which it might be inferred that the rule laid down is that the mere exercise by an employee of the supervision of the work in which other servants are engaged is one of the absolute duties of the master; but this doctrine has not met with general favor.    Mere supervision, and nothing more, by one of a number of servants, over the work in which they are engaged, will not necessarily raise the employee from the position of a fellow-servant to that of a vice-principal.    Supervision of the work, when coupled with the discharge of other duties in connection therewith, may have this effect.    Bloyd *v.* Ry. Co., 58 Ark. 66, 41 Am. St. Rep. 83.    The question at last, in each case, is whether the person charged as vice-principal was performing towards the injured servant a duty which the master owed to that servant and which the servant had a right to expect would be discharged by the master, and which the master could not avoid or shirk by placing the responsibility upon another person.    When the business of the master is of such character that engagement therein by the servant involves danger to him, whether it be from the use of machinery or otherwise, unless the danger is apparent, the master is bound to warn the servant of all dangers of which he may have knowledge, or could, by the exercise of ordinary diligence, discover. The master is also bound to instruct inexperienced servants, without reference to their age, in the operation of machinery and appliances with which they are not acquainted.    He is likewise bound to make rules and regulations for the conduct of his business, so that the machinery and appliances therein may be so operated as to promote the safety of his servants.    He may formulate and promulgate rules to be followed by his servants in the conduct of his

business, by placing the same in their hands; or he may authorize one of his servants to give direction as to the manner in which machines and other appliances of a dangerous nature shall be operated. In doing this he imposes upon this servant the duty which the law imposes upon him, and the servant so authorized stands in the place of the master, and is his representative, so far as other servants are concerned, as to any general rule that may be promulgated by him, or specific direction in a given instance. The rule-book of a railway company, in which are contained the regulations to be followed by engineers, conductors, flagmen, and others engaged in the operation of trains, is a familiar instance, where rules are promulgated in writing and placed in the hands of each employee. The general authority given to a train-dispatcher to control the movement of trains, with reference to any emergency that might arise, is an illustration of where the power to make a rule applicable to a single instance can be exercised. In such case the train-dispatcher stands in the shoes of the railway company, and the order of the train-dispatcher is the order of the company. Pittsburg Ry. Co. *v.* Henderson (Ohio), 5 Am. & Eng. R. Cas. 529.

A servant is bound to obey the order of his master unless the command includes a violation of the law, or the act required is so obviously dangerous that no person of ordinary prudence would undertake to perform it. Where the master himself gives the order and the servant obeys it, and is injured as · a consequence thereof, of course the master is liable. If the order is given by a representative of the master, who occupies towards him the position of vice-principal, · the same result follows. There are some cases holding that where a servant obeys an order from another servant, it is not necessary that such servant shall occupy the position of a vice-principal in order to render the master liable; but the cases in which this rule is apparently laid down are subject to serious criticism. A mere servant can not become a vice-principal by an usurpation of authority which the master has not conferred upon him. 1 Labatt's Mas. & Ser. §433 et seq.; *Hilton Co.* v. *Ingram,* 119 *Ga.* 652; *Ingram* v. *Hilton Co.,* 125 *Ga.* 658; *Chenall* v. *Palmer Brick Co.,* 125 *Ga.* 676. · There does not seem to be any good reason why the servant may not occupy a dual relation to other servants of a common master. One person may dis-

charge those duties which may be merely incident to an ordinary servant, and be, at the same time, authorized in given instances to discharge duties which would make him the representative or vice-principal of the master. As has been said above, it is not the rank, nor the grade, nor the title of a servant, which determines the question as to whether he is a vice-principal or a fellow-servant. It is the duty which he is discharging relatively to the service which determines his relation to other servants and the master. If another servant is injured when he is merely performing the duties of a fellow-servant, the master is not liable. If another servant is injured by his conduct when he speaks for the master, the master is liable.

It is the duty of the master to lay down rules to be followed by the servants in the operation of dangerous machinery. Such a rule is in the nature of a command to the servant, which he must obey unless obedience involves an act of recklessness or disregard of one's own safety. If the master, instead of promulgating a general rule and giving notice thereof to the servants, imposes this duty upon another servant in his employ, and such servant gives a command, it is the command of the master. The servant's voice is the voice of the master, and must be heeded as much as if it came from the mouth of the master himself. Of course it is not the master's duty to provide specific rules for every detail in the operation of his business; and one may be in a position where his giving orders in reference to the master's business would, on account of their character, not be orders emanating from the master. But whenever the order is of a grave nature relating to the operation of dangerous machinery, and is a general order to be followed under all circumstances, and not merely casual or in reference to a mere matter of trivial detail, amounting merely to an act of supervision only, the order must be construed as the order of the master, and not the order of a mere fellow-servant. When a servant seeks to hold a master liable on account of his having obeyed an order given by another servant, it is incumbent on him to show, not only that the order was given and obeyed, but that the order was of such character as that the instruction in reference thereto must, from the nature of things, have emanated from the master, and that the servant who gave it was authorized by the master to give the order in the particular case, or that the scope of his em-

ployment was such that his authority extended to giving general orders of that character. There are numerous cases decided by this court involving the question as to when a servant is a mere fellow-servant and when he is a vice-principal; and there are to be found in some of them expressions which are not entirely consistent with what is above stated; but we think that when the underlying principle that must be at the foundation of all these cases is arrived at, it is planted upon the propositions above recited, with a few exceptions which will be hereafter referred to.

In *McDonald* v. *Mfg. Co.,* 68 *Ga.* 839, it is held that a workman engaged in the same job with two or three others, having the direction of it, is not a general superintendent of a corporation, so as to bind it as such, but stands on the footing of a mere fellow-servant. In that case the alleged superintendent was engaged in the work with the other servants. He was doing the work of a servant at the time that the husband of the plaintiff lost his life, and the death of the plaintiff's husband did not result from obedience to any order or command given by the alleged superintendent. If he had left the field of a mere coservant and given a command in regard to the work which, from its nature, must have been the command of the master, and the death of the plaintiff's husband had resulted as a consequence of obedience to such command, the case would have been different. He was at most merely exercising the right of supervision, which will not, alone, make him a vice-principal. The case of *Atlanta Cotton Fac.* v. *Speer,* 69 *Ga.* 137, rested really upon the principle that the master is bound to provide his servants with a safe place to work. While it is true that the plaintiff, a young girl of 15 years, was not injured while actually at work, she was injured upon the premises of the master in a room where she and her companions were placed preparatory to leaving the premises after the work of the night had been completed. They had worked until after midnight. It was unsafe for them to attempt to leave for their homes at that hour of the night, and the servant in charge of them placed them in a room for the purpose of protecting them until daylight, when they could safely go upon the streets. The duty of providing the servants with a safe place to work properly includes the duty to provide them with a safe place to stay after their work is concluded, when the manner in which the master carries on the work is such that

they can not, with safety to themselves, leave the premises at the exact hour when their work is completed. The gist of the ruling is to be found in the concluding portion of the opinion of Mr. Chief Justice Jackson, beginning on page 151, where he says that if, in consequence of the impracticability of the children leaving for home at the time of night when their work is completed, they be permitted to remain until daylight, "the corporation must' see to it that the agents, whom it employs to protect and guard them, be careful to make them safe while within its curtilage, else it were better that the girls risk the rough and dark streets without, than the deeper and ruder holes within the walls of the factory."

In *Augusta Factory* v. *Barnes,* 72 *Ga.* 217, the suit was by a father for the loss of service of a minor child, resulting from the death of the child as a consequence of injuries received while the servant of defendant. While Mr. Justice Hall, in the opinion, states that the case might have been referable to the principle that the master owes a higher degree of duty to children of tender years in his employ than to adults, the decision is not placed on that proposition. The case is founded upon the proposition stated on page 228, that when the plaintiff used all ordinary care and diligence to avoid the injury occasioned by the negligence of the master's other servants, with whom he was disconnected at the time, and where he was acting in obedience to the orders of another servant over him, whose orders he was bound to obey, a right of recovery existed. The doctrine that a certain class of orders, given by one servant to another, are to be treated as the orders of the master, and not merely, the direction of another servant, is distinctly recognized in this case, even if it is not fully elaborated. *Krogg's* case, 77 *Ga.* 202, is properly referable to the principle that one charged with a duty of providing a safe place for work is the vice-principal of the master. In *McGovern's* case, 80 *Ga.* 227, the plaintiff was a workman in the picker room of the factory, with two others, one of whom had the direction of the work therein as foreman. He was injured by this foreman starting the machine without warning. This case falls within the rule laid down in *McDonald's* case, for the reason that the injury was not the result of any command emanating from the foreman, of a character which would be treated as a command of the master, and that the foreman seems to have been vested only with the right of mere super-

vision. In *Cheeney's* case, 92 *Ga.* 726, the person who was held to be the vice-principal of the plaintiff was the servant charged with the duty of rendering safe the place of work and securing a sufficient number of employees to carry on the work with reasonable and ordinary safety. As to these matters he was undoubtedly discharging the non-assignable duties of the master.

In *Spencer* v. *Brooks,* 97 *Ga.* 681, it was laid down, as a general rule, that the conductor in charge of a regular passenger or freight train, and having, as such conductor, full control of its movements, is not, while in the performance of the usual and ordinary duties with reference thereto, a fellow-servant with the engineer, fireman, and brakeman working under his orders. Under such circumstances the conductor is the vice-principal of the railroad company or of receivers operating it under orders of a court. As the operation of trains of the character referred to is attended with more or less danger, in the details necessary to the management and control of the same, the person upon whom devolves the general control and management of the train discharges, as to the other employees, duties which the law imposes upon the master, and he occupies, in relation to the other employees, the position of the master in the discharge of such duties. In *Taylor* v. *Ga. Marble Co.,* 99 *Ga.* 512, the employee held to be a vice-principal not only had control of all the servants working with him, but was vested by the master with authority to employ the servants under him, and they were bound to obey his orders. In *Blackman* v. *Thomson-Houston Elec. Co.,* 102 *Ga.* 64, the employee held to be a vice-principal was vested with authority to change the place of work of other employees, and also was charged with the duty of providing the appliance, the defect in which caused the injury to plaintiff. The case of *Cates* v. *Itner,* 104 *Ga.* 679, is similar to the *McDonald* case and the *McGovern* case, the employee alleged to be the vice-principal at the time of the injury being engaged in the work with the plaintiff and other servants, and exercising the mere duty of supervision, and therefore standing only on the footing of a fellow-servant. In *Stanley* v. *R. & D. Extension Co.,* 72 *Ga.* 202, while it appeared that the injury resulted from obedience to an order given by an alleged boss, it did not appear what relation this alleged boss sustained to the injured employee or his associates. Under such circumstances, the plaintiff failed to make out a case,

because it was incumbent upon her to show that her deceased hus-band obeyed an order given by an employee authorized by the master to give the order. The case of *Woodson* v. *Johnston,* 109 *Ga.* 454, closely resembles *Cheeney's* case, supra, and the ruling is based upon the decision in that case. "

In *Hamby* v. *Union Paper Mills Co.,* 110 *Ga.* 1, the plaintiff's right to recover was defeated upon the ground that the proximate cause of his injury was his own want of care. If there are any expressions in that case in conflict with the rule laid down in the *Barnes* case, the decision must yield to the older ruling. In *Ell-ington* v. *Beaver Dam Lumber Co.,* 93 *Ga.* 53, it is simply held that a track-hand, who is carried to and from his work upon the train of his master, is a fellow-servant of the engineer and fireman in charge of the train. This decision followed the ruling in *Prather* v. *R. & D. R. Co.,* 80 *Ga.* 427, and *White* v. *Kennon,* 83 *Ga.* 343. The same ruling is made upon a similar state of facts in *Railey* v. *Garbutt,* 112 *Ga.* 288. In *Gunn* v. *Willingham,* 111 *Ga.* 427, the person who it was claimed was a vice-principal in that case was properly held to be a fellow-servant only, for the reason that he was working with the other servants and was vested merely with the duty of supervision. In *City Council of Augusta* v. *Owens,* 111 *Ga.* 464, the employee held to be a vice-principal was vested with authority to direct the movements of the laborers in his charge, he did not join with them in the work, and the injury to the laborer was the result of obedience to an order given by such person; an order of the character referred to being held an act of negligence on the part of the master. The case of *Cedartown Cotton Co.* v. *Hanson,* 118 *Ga.* 176, is similar to the *McGovern* case. This is also true of *Shepherd* v. *Sou. Pine Co.,* 118 *Ga.* 292. In *Moseley* v. *Schofield's Sons Co.,* 123 *Ga.* 197, it was held that while the words "superintendent, or foreman" do not necessarily import that the employee to whom such term was applied was the alter ego of his employer, yet where it was also alleged that such superintendent or foreman had authority to employ laborers and was in charge of the work, this was sufficient allegation that such employee was the vice-principal of the master. In *Moore* v. *King Mfg. Co.,* 124 *Ga.* 576, the servant held to be the vice-principal was the general manager, having charge of all the work, invested with authority to employ hands and lay out and

plan work for them, and direct them what to do.   He sometimes
worked with his hands.   At the time the plaintiff was injured he
was not so working.   It was held that as to the act which resulted
in the injury he was not a fellow-servant with the plaintiff, but was
the vice-principal of the master.   In addition to this, the plain-
tiff's injury seems to have been received as the result of obedience
to an order from such vice-principal given in relation to the opera-
tion of a machine which constituted a part of the plant of the
defendant.   It has been held that an infant over the age of 14
years is within the operation of the fellow-servant rule, but that
the doctrine is not applicable to infants of tender years.   *Evans*
v. *Josephine Mills,* 119 *Ga.* 448, and cit.; 124 *Ga.* 320; *Canton
Cot. Mills* v. *Edwards,* 120 *Ga.* 447.

There is no decision of this court which we have been able to
find which lays down, in terms, the rule that one is a vice-principal
of the master only who is discharging one or more of the non-
assignable duties of the master.   While we have not cited, by any
means, all of the cases relating to this subject, those cited are suffi-
cient in number to show that there has been, with little variation,
a steady inclination on the part of the court to adhere to this rule
in its application to the particular facts then under consideration.
See Hopkins, Pers. Inj. §275 et seq.   We think we have shown
that in the other cases cited, where this rule has been apparently
departed from, the departure was only apparent, and, while there
may be some language of the Justice rendering the opinion that
would indicate a departure, that when the facts of the case are
critically examined they may all be grouped into the class in which
the master has only been held liable for the act of a servant in
which such servant was discharging, as to the other servants, a
non-assignable duty of the master.   What is known as the supe-
rior-servant rule has never been adopted in this State.   While
there are some decisions which would indicate a leaning towards
that rule, as has been said, upon an examination of the facts, it
will appear that that rule was not applicable, but the case was re-
solvable under the rule in reference to the non-assignable duties
of the master.   The superior-servant rule seems to have had its
origin in Ohio.   The rule, as promulgated by the Supreme Court
of that State, was that where one servant is placed, by his master,
in a position of subordination to another, and subjected to his

orders and control, and such inferior servant, without fault, and while in the discharge of his duties, is injured by the negligence of the superior servant, the master is liable for such injury; and this is true even though, at the time of the injury, the superior servant was performing the duties of a common workman. See 12 Am. & Eng. Enc. L. (2d ed.) 923. The superior-servant rule, as thus laid down by the Ohio court, was, in effect, rejected by this court in the *McDonald* case and the long line of decisions following that case.

It has been said that the superior-servant rule was followed by this court in *Atlanta Cot. Fac.* v. *Speer* and *Blackman* v. *Thomson-Houston Elec. Co.*, supra; but from what has been said above in reference to these decisions, we think they can be, under their facts, properly referred to the rule in regard to the non-assignable duties of the master. The only decisions that this court has ever made indicating the adoption of a rule in the nature of the superior-servant rule are those in cases where it is held that the conductor of a train is the vice-principal of the railway company; but these can be classed in the group of cases laying down the rule in reference to the non-assignable duties, when it is kept in mind that the operation of a railway train is always attended with more or less danger to the employees thereon, and that the orders of the conductor in reference to these dangers and the work are really the orders of the master. The rule which is most consistent with an accurate conception of the true law, and which seems to be supported by the vast preponderance of common-law authority, as well as by the rulings of the courts of high standing in this country, is that a servant who is charged with the performance of one or more of the master's personal duties is the representative of the master, and his negligent act is the negligent act of the master. That is, the test as to whether a servant is a vice-principal or a fellow-servant does not depend upon his title, or his grade, or the character of the work that he is engaged in, but it depends upon the act which he is doing which results in the injury. If his act is that which the law requires of the master relatively to the servant, his act is the act of the master. 12 Am. & Eng. Enc. L. (2d ed.) 933. This court has never adopted the view that the mere duty of supervision is a non-assignable duty of the master. In fact this view has been rejected in cases like the *McDonald* case

and others following that ruling.    But beginning with the *Barnes*
case, in the 72 *Ga.*, supra, this court has adopted (if not in terms,
in effect) the rule that when the work of a servant is connected
with the operation of a dangerous machine, if the master does not
promulgate the rules in reference to the manner in which the ma-
chine shall be operated, the servant placed in charge of the work,
with authority to command in reference to the mode and manner
in which the machine is operated, is discharging a duty which the
master owes to the servant, and one that is non-assignable.    If a
servant, although an adult and fully cognizant of his general duty
in reference to the machine, and aware of the dangers ordinarily
incident to its operation, obeys a direct order of a servant author-
ized by his master to give the direction, in reference to the mode
and manner of operating the machine, and injury results, the mas-
ter is liable, unless the act required to be done is one so obviously
dangerous that no reasonably prudent man would undertake to
perform it, or the servant was aware of the danger or could, by
the exercise of ordinary care, have discovered it, and the master
had equal means with the servant of discovering the danger at-
tendant upon obedience of the order.    For a discussion of the ques-
tion involved in the present case and an examination of the rul-
ings of the various courts in this country, see the following cases
and the notes thereto:  Jackson *v.* Railroad Co. (W. Va.), 46 L.
R. A. 337; Lafayette Bridge Co. *v.* Olsen (C. C. A.), 54 L. R. A.
33; Canney *v.* Walkeine (C. C. A.), 58 L. R. A. 33.

  In the present case there was evidence that N. S. West was
superintendent over the hands of the Dublin Cotton Mills, and that
he was the overseer.    This alone was not sufficient to show that he
was the vice-principal.    The evidence showed further that he had
charge of the work and the hands, and that the plaintiff was work-
ing under his orders.    This alone, without evidence as to what
occurred or what brought about the injury, would probably not be
sufficient to show that West was the vice-principal.    It would de-
pend altogether upon the character of the order.    In other words,
before the servant would take rank as a vice-principal of the mas-
ter, it must appear that he is vested with authority to give those
orders which the servant of a master is entitled to regard as coming
from the master himself.    Orders in reference to mere matters
of trivial detail amounting merely to supervision in the operation

of the business may be properly entrusted to a servant, if the master has been free from negligence in the employment of the servant to whom he entrusts this duty; that is, many orders in the operation of a business are part of the mere supervision of the work. But when there is an order in reference to the mode and manner in which the work of the master shall be performed, and this work consists in the use of or work about a dangerous machine, it is to be treated as the command of his master, when emanating from one representing the master, although it may come through the mouth of a person who, under other circumstances, is merely a colaborer.

The duty of the plaintiff was to clean the machine at stated times. This work could be done either with the machine running or with it stopped. There was a latent danger to be encountered when the work was done with the machine running. The plaintiff, according to the testimony, did not know of this latent danger. The evidence authorized a finding that the master either knew of it, or could have known of it by the exercise of ordinary diligence. As the evidence shows that the superintendent ordered the plaintiff, in positive terms, to clean the machine while it was running, it was for a jury to determine whether he was in the performance of an act which was a part of the mode and manner of the master's business, and whether the command of the superintendent was, under all the circumstances, the command of the master. Whether the danger in the performance of the act in the manner directed by the superintendent was not so obvious to the plaintiff that he was guilty of negligence in obeying the command was also a question for the jury. It must be kept in mind that the order involved in this case was not a mere direction for one occasion only, but it was a rule laid down for observance by the servant to be followed at stated intervals, and was of such nature that the plaintiff, from all the circumstances, had the right to presume that in the superintendent's order he heard the voice of the master. He not only heard the voice of the master, but he heard it speaking in reference to a matter which should be controlled by his voice. The evidence proved the allegations of the petition substantially as laid, and it was error to grant a nonsuit.

*Judgment reversed. All the Justices concur, except Fish, C. J., absent.*