233, 234.  VINSON *v.* WILLINGHAM COTTON MILLS,

and *vice versa.*

1. It is not incumbent upon persons or corporations using machinery in the prosecution of their business to procure the best and safest machinery which can be made. It is sufficient if the machinery is of a kind in general use, and reasonably safe for all persons who operate it with ordinary care and diligence. "No manufacturing business or business establishment is bound at its peril to make use only of the best implements and the best machinery and the safest methods." Cooley, J., in Michigan Cent. R. Co. *v.* Smithson, 45 Mich. 219, 7 N. W. 793; 1 Am. & Eng. R. Cas. 104.

2. An employee 18 years of age, who has had 7 months' experience and 2 months' special instructions in her particular line of work, and in connection with the special kind of machinery used in such work, is not an inexperienced child of tender years, so as to impose upon her employer any exceptional degree of care.

3. In a suit by a servant against his master for personal injuries, the burden is upon the servant to show negligence, causing the injuries, by the master; and a servant, while working with dangerous machinery, is bound to exercise due diligence to avoid any casualty to himself, and if he fails to exercise such care he can not recover, though the master himself may have been at fault.

4. Negligence, to be the basis of a recovery, must be the proximate cause of the injury; and if the injury would have occurred, regardless of the negligent act, there can be no recovery.

5. The evidence introduced by the plaintiff, and all reasonable deductions therefrom, failed to establish the allegations of negligence against the master, but, on the contrary, showed that the servant's injury was caused by her own neglect to exercise ordinary and due care in connection with her work.

6. Under the foregoing well-settled principles of law, the judgment granting a nonsuit was right.

Action for damages, from city court of Macon—Judge Hodges. January 7, 1907.

Argued March 27,—Decided May 24, 1907.

*Glawson & Fowler, Joseph H. Hall, J. E. Hall,* for plaintiff.

*Hardeman & Jones, John P. Ross,* for defendant.

HILL, C. J.   The plaintiff in error, a minor 18 years of age, by next friend, sued her employer, the defendant in error, for injuries sustained while engaged at the work she was employed to do. Her petition alleged that she was operating a loom, and, while so employed, was struck in the eye with a shuttle, which was thrown out of its place. Her employer was alleged to have been negligent in the following particulars:   (1) In failing to provide a shuttle

guard, an appliance in general use in cotton mills of similar character; (2) in failing to instruct and warn its employee of the great danger attending her work as a loom operator because of the absence of a shuttle guard on the loom, the employee, by reason of immaturity and inexperience, not knowing and having no opportunity to know of this danger.   These two allegations of negligence, although somewhat elaborated by the allegations and the evidence in support thereof, present substantially the charges of negligence made against the employer.   We will consider these two grounds in their order.

The machinery was not alleged to have been defective or out of repair, and there was no latent defect; but, because of the defendant's failing to provide a shuttle guard, it was charged that the machinery was not equal in kind to that in general use, and was not reasonably safe for all persons to operate it with ordinary care and diligence.   A shuttle guard is a steel rod fixed to the "reed cap," directly over the shuttle as it passes from side to side of the loom.   This guard extends directly over the path of the shuttle, and is a device in general use in all cotton mills.   It prevents the shuttle from flying up while the loom is in operation. It does not prevent it from flying out.   The flying shuttle strikes the guard, and is thus deflected from its course, and is prevented from flying up, and made to fly out on the side by the guard.   The loom in use by the defendant was of the Crumpton & Knowles manufacture, and they make the best and most modern types of looms.   These looms were used for the manufacture of hose and belting duck, and no shuttle guards are ever used on these looms in the manufacture of such material; but, in the place of a shuttle guard, there is used what is called a "reed cap," projecting above the race board of the shuttle, and occupying, with reference to the shuttle, the place of the shuttle guard.   In other words, a reed cap on the Crumpton & Knowles looms for the manufacture of hose and belting duck, such as were used in the defendant's mills, performs the same function as the shuttle guard.   The evidence on this allegation of negligence, as introduced by the plaintiff, therefore, established the fact that the machine in question was manufactured by machinists of the best skill and character, was of the best and most modern type, and had the usual appliance attached to such looms for the protection of

operators from flying shuttles. It is the general rule of law that the master is not required to provide an absolutely safe machine, but only one equal in kind to that in general use. Civil Code, §2611; *Ala. Mid. Ry. Co.* v. *Guilford*, 119 *Ga.* 523, 46 S. E. 655; *Davis* v. *Augusta Factory*, 92 *Ga.* 712, 18 S. E. 974. As illustrating the danger or safety in operating this character of looms, the plaintiff testified that during the six or seven months in which she had been occupied operating one of the looms, only one shuttle had flown out, from over 100 looms in operation, and that this one was from a loom which was out of fix. We therefore conclude that the testimony failed to support the allegation of negligence as to the dangerous character and condition of the machinery used by the master.

But, if not having a shuttle guard was a dangerous defect, it was perfectly patent to the operator. It is insisted that she was a minor of tender years, and inexperienced in the use of such machinery, and that her employer was guilty of negligence in failing to instruct and warn her of the danger attending her work as a loom operator because of the absence of shuttle guards on the looms. The evidence for the plaintiff showed that she was 18 years of age, and she was not shown to have been deficient in intelligence. She had been running a loom for 6 or 7 months, and had 5 months' experience in running the loom by which she was injured and 2 months' special instruction by her employer before she was permitted to run the loom. It is therefore fair to presume that she knew how to operate a loom. She knew that shuttles did sometimes fly out of the looms; for one flew out of the loom once before. She knew that it was the duty of the operator to watch the shuttle, so that, if the thread broke or got tangled, she could stop the loom and fix it; and she knew that, if the broken threads got tangled or "wadded up," it would cause the shuttle to fly out. The evidence showed that the shuttles do not fly out in front, where the operator should stand when operating the machine, but that they do fly out either to the right or left. The plaintiff's testimony on the foregoing points shows that she was not inexperienced. It shows that she knew how to operate a loom. She stated that she had been in the habit of operating two looms, but that on the day she was injured she was only operating one; that while her loom was in operation she took her seat upon the

stool on the side of the loom, with her back to it, and was reading a newspaper or book. She knew that her duties required her to constantly watch the shuttle to prevent an accident if the threads broke or got tangled. Her own expert witness testified that such conduct on her part was unsafe. "It was unsafe for the weaver to sit in front of the loom, with her head on a level with the shuttle, and be engaged in reading at the time, and not watching the shuttle for the purpose of filling the shuttle and repairing the breaks. It is the duty of the operator to watch the work, to repair such breaks as soon as they occur. It is unsafe for the operator to run a loom, paying no attention to the loom, and leave breaks in a warp thread unrepaired, and then sit down with her head on a level with the shuttle course or lathe of the loom." It might, therefore, be conceded that the master was negligent in not providing a shuttle guard; yet, as shuttle guards do not prevent shuttles from flying out at the sides, but only out at the front, the plaintiff's own negligence was the proximate cause of her injury. It can not, under her own testimony and that of her expert witness, be reasonably contended that she was in the exercise of due care; but her own carelessness was the cause of her injury. This evidence overwhelmingly shows that the safe way to operate a loom was to stand up in front and constantly watch, and that the unsafe way was to sit down at the end of the loom and become absorbed in reading. It can hardly be doubted that, if the plaintiff had been watching to prevent the result of broken threads, she would not have been hurt. Having, with her experience and knowledge, voluntarily selected the unsafe way to perform her work, she can not recover. Civil Code, §2612; *Brush Electric Co.* v. *Wells,* 103 *Ga.* 515, 30 S. E. 533; *McDaniel* v. *Acme Brewing Co.,* 113 *Ga.* 80, 38 S. E. 404; *Southern Cotton Oil Co.* v. *Skipper,* 125 *Ga.* 368, 54 S. E. 110.

In addition to what has been stated, it may be said that the proof is clear that the absence of a shuttle guard in no wise contributed to the injury of the plaintiff. If there had been a shuttle guard, it would have prevented the shuttle from flying out towards the front and have deflected it to the side. In other words, with a guard the shuttle would have taken the same course that it did take, and it is not unreasonable to suppose that the reed cap, which on this type of machine occupies the same place that the

shuttle guard does to other machines, did prevent the shuttle from flying out to the front, and did deflect it to the side. It seems, therefore, inevitable that the shuttle guard in this case would not only not have prevented the injury to the plaintiff, but, in connection with her own careless conduct, would actually have caused the injury. "It needs no citation of authority to sustain the proposition that negligence, to be the basis of a recovery, must be connected with the injury which is the subject of the suit." *Moseley* v. *Schofield,* 123 *Ga.* 199, 51 S. E. 310. It must have been the proximate cause of the injury to the servant, or the master is not liable therefor. *Richmond R. Co.* v. *Dickey,* 90 *Ga.* 491, 16 S. E. 212; *Hamby* v. *Union Paper Mills Co.,* 110 *Ga.* 1, 35 S. E. 297.

We therefore conclude that under no view of the proof submitted by the plaintiff in support of the allegations of negligence, and all fair and reasonable deductions therefrom, under well-established principles of law would a verdict for the plaintiff have been supported; and the court did not commit an error in granting the motion to nonsuit.

*Judgment affirmed on the main bill of exceptions; cross-bill of exceptions dismissed.*